# CHARLESTON.

ANN WOODRUM *et als. v.* IRA D. PRICE *et als.*

(No. 5944)

Submitted October 4, 1927.   Decided October 11, 1927.

1. DEEDS—*Manual Delivery of Deed to Grantee or Some One for Him Not Necessary to Make Deed Valid and Operative. Delivery May be Constructive, Depending Upon Intention Ascertained From Facts and Circumstances Surrounding Execution.*

   The manual delivery of a deed to the grantee or some one for him is not necessary to make the deed valid and operative. The delivery may be constructive, depending upon the intention ascertained from the facts and circumstances surrounding its execution.   (p. 387.)

2. SAME—*Son of Grantee in Deed Not Incompetent, Under Sec. 23, Chapter 130, Code, to Testify as to Execution or Delivery by Grantor, Since Deceased, Simply Because He is Son of Grantee. As Such He Has no Interest in Suit Which Would Render Him Incompetent.*

   A son of the grantee in a deed is not incompetent, under Sec. 23, Chapter 130, Code, to testify as to its execution or delivery by the grantor, since deceased, simply because he is the son of the grantee. As such he has no interest in the suit which would render him incompetent.   (p. 388.)

3. ATTORNEY AND CLIENT—*In Order to Render Communications Made to Attorney at Law Privileged, It Must be Shown That Relation Existed, or Was Contemplated, at Time; Burden of Showing Such Relation Rests Upon Party Who Asserts That Communications Were Privileged.*

   In order to render communications made to an attorney at law privileged, it must be shown that the relation of attorney and client existed, or was contemplated, at the time; and the

burden of showing such relation rests upon the party who asserts that the communications were privileged.    (p. 388.)

Appeal from Circuit Court, Boone County.

Suit by Anne Woodrum and others against Ira D. Price and others.    Judgment for defendants, plaintiffs appeal.

*Affirmed.*

*Thomas Coleman* and *John B. Hager*, for appellants.
*Bratton & Garnett* and *Leftwich & Shaffer*, for appellees.

Lively, Judge:

Benjamin F. Price died intestate in the year 1916, having executed and acknowledged two deeds each bearing date March 13th, 1915; one to Ira D. Price, defendant, conveying about 25 acres by metes and bounds, excepting therefrom about two acres that day deeded to Ella E. Price, defendant; the other deed is to Ella E. Price, and contains two acres more or less by boundaries and is a part of the land described in the first mentioned deed.    Two or three days after the death of Benjamin F. Price, these two deeds were admitted to record in the office of the county court clerk.    The 25 acres conveyed by these two deeds is located near the town of Madison and on the opposite side of Coal River and was used by the deceased as a farm, on which he had reared a large family, the plaintiffs and defendants in this case.    By reason of the industrial development in that thriving community, the land increased in value.    A bridge was later constructed across the river from it, and a highway located and built through.    Six or eight acres was sold by the grantee in one of the deeds for about $12,000.00; and later, gas in paying quantities was discovered on the tract.    In the year 1925, nine years after the death of Benjamin, plaintiffs who are his children and heirs at law, instituted this suit against Ira Price (a son of Benjamin), and Ella E. Price, wife of W. R. Price (also a son of Benjamin).    The object of this suit is to set aside and cancel the two deeds; to partition the land among the children of Benjamin, and to require the defendants to account for the rents, issues, profits and proceeds of

the 25 acres, which was all of the real estate claimed to have been owned by the father,. Benjamin.  Upon final hearing, the circuit court denied relief to the plaintiffs and dismissed their bill, and they appealed.

The controlling question presented is, whether there had been a delivery of the two deeds to the grantees.

According to the evidence of the defendants, there was actual manual delivery to the grantees; but the plaintiffs claim that all of the evidence of manual delivery is incompetent under sec. 23, chapter 130 of the Code, as being testified to by witnesses interested in the litigation.

It appears that in 1903 all of the children of Benjamin F. Price had married and left his home, except Ira Price, defendant, who had not married, but had gone to the home of his brother, W. R. Price, who lived at Malden, in Kanawha County, and was living with him.  The father being left alone in his home on the 25 acres, went to Malden and induced Ira to return and live with him, with the understanding that he would convey the home place to him.  The father and son lived together until 1907, when the son married, and brought his wife into the home, where they all lived together amicably until the death of the father.  Sometime before 1915 W. R. Price moved back from Malden, and resided on Coal River, a short distance from his father's house.  About a month prior to the execution of the deeds, Benjamin had made arrangement with Vernon G. Vande Linde, a notary public, school teacher and farmer, with whom he was acquainted, for the preparation and acknowledgment of the deeds.  This notary lived about four miles from Benjamin's home.  On the day of the execution of the deeds, the grantor went to the home of the notary public in company with defendant, W. R. Price, his son, and taking with him his title papers to the 25 acres, and upon the direction and instruction of the grantor, the two deeds were drawn and were executed and acknowledged.  The deed to Ella Price, containing two acres by boundaries, is in fee without reservation; that to Ira Price is in fee reserving the control of the land during the natural life of the grantor.  It does not appear from Vande Linde's evidence that the deeds were then de-

livered to W. R. Price.   According to the testimony of W. R.
Price, he and his father returned to the home of the former,
where the deed to Ella E. Price for the two acres was de-
livered to her, which she read in their presence and in the
presence of their son, Zacha Price.   She placed the deed in
some receptacle in the house.   From there they went to the
home of Ira Price, where the deed to him was delivered to
his wife, who also read the same and the deed was then placed
in a wooden box belonging to Ira, which had been made for
papers of that character, on which was a lock with two keys,
one kept by the father and the other by Ira.   Two or three
days after the sudden death of Benjamin in 1916, W. R.
Price and Ira Price placed their deeds to record.   The testi-
mony of W. R. Price, with reference to what was done with
the deeds after they were executed and acknowledged by
Vande Linde is claimed to be incompetent, under sec. 23,
chapter 130, Code.   J. D. Price, a cousin of Benjamin, who
for many years lived about a half mile away from the latter,
and who saw him quite frequently, said that Benjamin told
him he had promised to make Ira a deed, because the latter
had come over and stayed with him; that Ira and his wife
were as good to him as they could be; and several times had
told him that he intended to make the deed; and finally,
that he had made the deed to Ira, and that he had "got that
off his hands."   F. P. Murphy, a practicing attorney in
Madison, (the county seat), testified that he knew Benjamin
quite well, as the latter lived about a quarter of a mile from
his office; that they were friends, and that he saw him fre-
quently; that prior to his death the old gentleman came
to him to find out whether the deed he had made to Ira was
sufficient to convey to him the land, or whether he would
have to make a will; whereupon, he advised him that his
deed was sufficient to convey the property.   He said the old
gentleman told him that Ira was the only one of his children
that had "stuck by him", and for that reason he had de-
cided to give him nearly everything he had, but not to say
anything about the deed he had made Ira, because his daugh-
ters "would raise hell with him, if they knew of it."   This
testimony is claimed to be incompetent as a privileged and

confidential communication between lawyer and client. Zacha Price, son of W. R. Price, testified that he was about 14 or 15 years old at the time of the execution of the deed (he was 25 years old at the time he gave his evidence), that his grandfather. Benjamin and his father left his father's house on the morning of the execution of the deeds for Vande Linde's home, and returned that evening about supper time, when his grandfather delivered the deed to the two acres to the grantee, his mother, saying: "Here Ella is your deed to the two acres of land," and asked her to read it, which she did, and that after supper his grandfather left in company with his father, W. R. Price. While this evidence was objected to as incompetent on account of interest in the witness, it is not seriously objected to as such by counsel here. The criticism of the evidence is, that it is not entitled to much weight.

To militate against the theory of manual delivery of the deeds, plaintiffs introduced testimony to the effect, that prior to the death of Benjamin, he had entered into negotiation for the sale of the entire 25 acres, for a price of $20,000.00, also that after the death of the father, Ira Price on numerous occasions had stated to some of his sisters, plaintiffs herein, and in the presence of other persons that the deed to him had not been in his possession, that he had seen it only once or twice, and that his father had kept the deed locked up in the wooden box. Some of the daughters testified also that their father had told them that he intended to sell the farm and divide the proceeds among his children.

The facts shown by evidence clearly admissible, are that in 1903 Benjamin's children had left him, and that he induced Ira to return and live with him, promising to give him the 25 acres in dispute; that Ira did live with him until his death in 1916, having married about 1907, and that the arrangement was carried out harmoniously and satisfactory; that Benjamin directed Vande Linde to make the deeds as drawn, (for $500.00 as consideration in Ira's deed), and signed, sealed and acknowledged the same; that the deed to Ira was in a locked wooden box belonging to Ira in the joint home of both at the time of the father's death, to which box each had

a key; that the box was procured by Ira for the purpose of securely keeping valuable papers and the like; and that both deeds were placed on record by the grantees a few days after the death of the father.  Supplementing these facts is the evidence of Zacha Price, the son of W. R. Price, that Benjamin on the evening of the execution of the deeds made manual delivery of the deed to Zacha's mother, the grantee, of the two acres.  If there was actual delivery of the deed, and there is no direct evidence to contradict Zacha, it is immaterial where the deed was afterwards kept, for the title then passed, and even if the deed had been destroyed by anyone, the title would have still been in the grantee.  Bearing these facts in mind, the question of the intention of the grantor arises.  What was Benjamin's intention in executing the deeds in the light of these established facts?  As was said in *Glade Coal Mining Co.* v. *Harris*, 65 W. Va., page 152: "If the parties meet to make it and read, sign and acknowledge it without reservation, this amounts to delivery," quoting from *Adams* v. *Baker*, 50 W. Va. 249-252; see *Reed* v. *Gunter*, 101 W. Va. 514.  Under the primitive law livery of seisin was the method of making transfer of realty, and was a manual transfer of the possession of the land itself. The delivery of the deed in modern times is symbolical of the livery of seisin, and manual delivery is not necessary.  A constructive delivery is sufficient.  The delivery is made if an intention appears that the deed shall be legally operative, however, that intention appears.  Tiffany on Real Property (2nd Ed.), sec. 461, p. 1736.  With respect to the deed of the two acres to Ella Price, we have evidence of the son Zacha that manual delivery was made.  That the evidence of the son is competent, is decided in *Hollen* v. *Crim and Peck*, 62 W. Va. p. 451; *Hudkins* v. *Crim*, 64 W. Va. p. 225; and *Whiteman* v. *Backus*, 102 W. Va. p. 454.  He has no pecuniary interest in the result of the suit.  To exclude a witness because of interest, that interest is tested by common law and must be present, certain and vested; and not uncertain, remote or contingent.  But it is argued that being a boy of 14 or 15 years of age at the time, his evidence has little weight, and being practically as that of the father, should

be disregarded.   The impressions and details of an important transaction are often more vivid and lasting upon the plastic mind of youth than upon the minds of those of more maturity. Taken in connection with the formal preparation, signing and acknowledging of the deed, the declarations of the grantor, and the other facts and circumstances, the court had ample competent evidence on which to base its decree, sustaining the validity of this two-acre deed.   And the fact that this deed was delivered is strongly indicative that the other deed to Ira was likewise delivered, either actually or constructively.   Why would the grantor deliver to the daughter-in-law the one deed, and withhold the other from the son to whom he had declared to others before that he intended to make Ira the deed, and afterwards, that he had done so and the matter was ''off his hands?''   Strongly indicative of the intention is the evidence of Attorney Murphy, as well as giving the reason which impelled the non-recordation of the deeds prior to the death of the grantor.   But counsel for appellants vigorously attack the admissibility of this evidence, and seemed to have convinced the trial court that it was a privileged communication and not admissible.   The trial court, however, found enough in the evidence to sustain the validity of the deeds without the evidence of Murphy. The rejection of this evidence is assigned as cross-error.   We will consider that point.

It is well established that communications between lawyer and client are privileged, and are inadmissible upon objection.   But it is essential that the relation of lawyer and client must exist in order to exclude them.   Communications between husband and wife are inadmissible, but to exclude them, the marital relation must first be established.   The necessity of predicating the rejection upon the relation of lawyer and client is aptly expressed in 28 R. C. L. p. 553, sec. 143, and is here quoted: ''The testimony of a witness as to conversations with a party to an action cannot be excluded merely on the ground that the witness is an attorney at law, and that the communication was confidential, unless it also appears that he was the attorney for the party, and that the communications were made in the course of such professional employment.   In other

words, to exclude declarations as communications to counsel, or made with a view to employment, their root in the relation, or contemplated relation, of client and attorney must be manifest. They must be the offspring of the relation, present or prospective, not of taking or expecting to take the fruits of such a relation without forming it. Mere casual conversations with an attorney and legal advice given in the course thereof are not entitled to the benefit of the privilege. And this is true though the conversations have reference to matters about which it is probable there will be litigation. To tax a lawyer's courtesy or liberality for advice or services is not to employ him. Thus if an attorney at law is consulted, with respect to a testamentary disposition of property, in the capacity of a friend, and not as a legal adviser, is nominated executor, and he makes and delivers to another person a memorandum from which a will is subsequently drafted by the latter, there is no relationship of attorney and client between the attorney and the testator as to the preparation of the will, and the attorney is a competent witness as to what occurred at the time of such consultation.'' See also *Mays* v. *Mays*, 113 S. E. (Ga.) 154. We find no suggestion in Murphy's testimony that Benjamin was his client or ever had been, or that any employment was contemplated. It is quite common knowledge that lawyers in this state and especially in the rural communities, are asked their opinions for gratuitous information, and opinion and advice are given without suggestion of employment. Often these opinions, commonly called ''curb stone'' or ''horse-back'' opinions, are worth as much as the inquirer pays (nothing). But counsel argues that the relation of lawyer and client will be presumed to have existed between Murphy and Benjamin; that it was in the power of defendants to show by Murphy that no fee was paid or expected to be paid, and therefrom it must be presumed that a fee was paid and that the relation existed. If a witness is to be excluded for any reason, the burden is on the person who asserts the reason to prove it. If a lawyer's testimony is to be excluded because the relation of attorney and client existed, the burden is on the objector to show that the relation existed, and is therefore

privileged.   *Earle* v. *Grout,* 46 Vt. 113; *Jane Turner's appeal,*
72 Conn. 305, 317; *Equitable Securities Co.* v. *Green,* 113 Ga.
1013; *Sharon* v. *Sharon,* 79 Cal. 633, where it is said in the
syllabus, ''The burden is upon the party seeking to suppress
the evidence to show that. it is within the terms of the statute
relating to confidential and privileged communications;'' and
*Mowell* v. *Van Buren,* 28 N. Y. Supp. 1035, 1037.   Numerous
other decisions could be cited.   The rule of evidence is well
settled and is based on sound reason.   The evidence of Mur-
phy was admissible.   It strongly indicates that Benjamin
intended the deed to Ira to be effective.   We think it is
immaterial whether there had been actual delivery of the
deed to Ira or his wife, as testified to by the brother, W. R.
Price, wherefore, it is unimportant to pass upon the admissi-
bility of his evidence of actual delivery, claimed to be ad-
missible by appellees' counsel under *Crothers* v. *Crothers,* 40
W. Va. 169.   W. R. Price said he was testifying against his
pecuniary interest, giving as a reason therefor, that if the
deed to Ira was annulled he would receive more as an heir
than the value received by him under the two-acre deed.   It
is clear that the wooden lock box in which Ira's deed was
kept was not in the exclusive control of the father; both had
access thereto. . The evidence on the whole justifies the con-
clusion that Benjamin's intention was to make the deeds
effective, and sustains the decree.   Whether the declarations
of Ira to his sisters and in the presence of others that he
never had physical possession of the deed, if in fact they
were made by him, is unimportant.   Physical possession was
not necessary.   While the evidence of Dunlap and wife as
to the negotiations of sale and purchase with Benjamin is
indicative of an intention not to make the deeds effective, it
must be remembered that Benjamin reserved control of the
property deeded to Ira during his natural life, and he may
have considered that he had the right of disposal for his and
the latter's benefit.   It is not altogether inconsistent with
the expressed intention to make the deed effective.   We can-
not overthrow the decree on that evidence, and it will be
affirmed.

*Affirmed.*