# CHARLESTON.

HOWELL *et al.* v. MCCARTY *et al.*

Submitted February 22, 1916.   Decided March 7, 1916.

1. ATTACHMENT—*Proceeds of Property—Rights of Attaching Creditor.*
     By attachment, a creditor acquires in the proceeds of property claimed by his debtor no right or interest superior to that possessed by the latter therein at the time of the levy or service of the writ. (p. 697).

2.   SAME—*Property Subject—Notes Indorsed for Collection—Lien—
"Bona Fide Purchaser".*

Where the property so claimed and levied on consists of nego-
tiable notes endorced by the payees in blank and delivered to such
debtor, their agent, solely for collection or discount on their behalf,
the attachment creditor, by levy on the instruments as the property
of the agent, although without notice or knowledge of his want of
title, does not acquire the rights or position of a bona fide pur-
chaser for value nor any lien on the choses in action.   (p. 697).

3.   EVIDENCE—*Parol—Negotiable Instruments—Indorsement for Col-
lection.*

As between the original or immediate parties and other persons
not holders in due course, parol evidence is admissible to show that
the blank endorsement and delivery of a negotiable instrument were
made solely for the purpose of collection or discount on behalf of
the endorser.   (p. 698).

4.   SAME—*Unaccepted Offer of Compromise.*

Testimony offered to show an unaccepted offer of compromise is
incompetent and inadmissible in evidence.   (p. 703).

Appeal from Circuit Court, Harrison County.

Suit by Eli Howell and others against Cam L. McCarty and
others.   From decree for defendants, plaintiff appeal.

*Reversed, and decree entered for plaintiffs.*

*R. S. Douglass,* and *Kreps, Russell & Hiteshew,* for ap-
pellants.

*Edmund F. Garrett* and *Homer Strosnider,* for appellees.

LYNCH, JUDGE:

Howell Brothers Company were dealers in Texas real
estate, buying and selling the same for profit, at the time
of the transaction involved in this litigation.   Cam L. Mc-
Carty was, during the same time, their agent to solicit and
make sales of lots of different dimensions and accept nego-
itable notes as evidence of the consideration for such sales,
subject to their approval.   To W. F. Kahler and H. M.
Mitchell McCarty sold lots pursuant to such authority, and
from them took negotiable notes payable to Howell Brothers
Company.   These notes the company endorsed in blank and
delivered to McCarty; as they claim, either for collection
when due or sale to banks for the use and profit of the payees.

Being indebted to Carl L. Hornor, McCarty offered to sell and transfer to him the notes, then in his possession, for value, less the amount of such indebtedness, and, to afford Hornor an opportunity to determine whether to accept the proposal, placed them in the custody of E. F. Goodwin, an attorney at law then residing at Clarksburg, with authority to effect such transfer by delivery to Hornor should he decide to accept the proposition or in lieu thereof to negotiate and transfer them to any other purchaser he might find willing to buy. Instead of accepting the McCarty offer, Hornor brought his bill in equity, and thereon caused the issuance of an attachment against McCarty as claimant and a suggestion against Goodwin as custodian of the instruments. Howell Brothers Company then filed their bill against Hornor, McCarty, and Goodwin, wherein they alleged in detail the facts already related as to the lot sales, the procurement and endorsement of the notes and delivery thereof to McCarty as agent and by him to Goodwin, the service of the suggestion on the latter, their ownership of the instruments, and that the endorsement and delivery thereof was merely for collection or sale by McCarty for and on their behalf and not otherwise; and prayed redelivery of the notes to them. They have brought here for review on appeal a decree denying the relief sought except as to the residue of the amount due on the notes after deducting McCarty's indebtedness to Hornor and the interest accrued thereon and costs of suit, the decree being entered in both causes consolidated and heard together.

The decree apparently was predicated upon the theory that, as a holder for value in due course before maturity, without notice of any defect or infirmity in the title of the possessor, takes an indefeasible title to a negotiable instrument endorsed in blank to his transferrer, a creditor of the person in possession likewise acquires by attachment a perfect title to the proceeds of such instruments when so endorsed. There is, however, a wide difference, as we think, between the positions occupied by persons belonging to these respective classes. A holder in due course of business dealings takes the paper discharged from pre-existing equities of which he had no notice or knowledge. Indeed, his purchase is favored in law, in so far that it can not be defeated although he may have possessed

77 W. Va.

knowledge of circumstances sufficient to generate in the mind of a reasonably prudent man a persuasive suspicion of actual want of title or of some legal defect in the title of the transferrer. This proposition is so aptly stated in *Bank* v. *Furniture Co.,* 57 W. Va. 625, as to render unnecessary any further attempt to elucidate it. From the opinion we quote what seems peculiarly appropriate to this phase of the case: "In the absence of knowledge that the title of the person in whose possession such paper is found is defective or invalid for any reason, and of such facts importing want of title as can not in the exercise of fairness and good faith be ignored, one who purchases from the holder acquires a good and indefeasible title thereto, however defective the title of the transferrer may have been, provided a valuable consideration was paid, the note was not overdue when purchased, and the purchase was made in the ordinary course of business".

But that principle does not enure to the benefit and advantage of an attaching creditor, if indeed to any creditor who purchases the instrument for the purpose of collecting a debt due to him from the person in possession. The latter proposition we do not discuss or decide, because it is not involved. The doctrine well settled in this state, and the one generally recognized, denies to the creditor seeking to recover his debt by legal process any right or interest in the property sought to be subjected superior to that held by the debtor at the time of the levy. The extent of the debtor's right in the property determines the extent of the right of the attaching creditor. By the issuance and levy of the process is effected nothing more than the sequestration of the debtor's interest in such property. If he had no interest, service of the process avails nothing. It is abortive. Our cases uniformly so hold. *Neil* v. *Produce Co.,* 41 W. Va. 38; *Bank* v. *Harkness,* 42 W. Va. 156; *Wall* v. *Railroad Co.,* 52 W. Va. 485; *Lipscomb* v. *Condon,* 56 W. Va. 417; *Fuel Co.* v. *Grain Co.,* 71 W. Va. 717. See also 4 Cyc. 632 *et seq.*

But it is argued, not without some merit, that, as held in some jurisdictions, an unrestricted endorsement imports the absolute extinguishment of the endorser's interest in a negotiable instrument, and hence is not subject to explanation by proof to the contrary. This strictness, however, is based upon

the proposition that, as such an endorsement adds to the value of the instrument by accelerating its currency in commercial transactions, that value would be impaired and the currency of the paper retarded by the admission of testimony to vary or contradict the terms of a contract which the law presumes or implies from the endorsement. But neither is this proposition nor the reasoning supporting it generally accepted as propounding the correct doctrine as between the endorser and the creditor of the person in possession who is not a bona fide holder for value. As to the latter, reason and justice demand that any contemporaneous agreement between the endorsing payee and the person in possession, upon which the endorsement was made, should be enforced when proved by any evidence, documentary or oral, sufficient to establish it. So where a note or bill is endorsed in blank and delivered to another person for collection, upon an agreement that the proceeds thereof are to be paid for the benefit of the transferrer, parol evidence is admissible against the endorsee and all other persons except holders in due course to prove the paper was endorsed and delivered solely for the purpose of such collection. *Johnson* v. *Schnabaum,* 86 Ark. 82; *Ewan* v. *Brooks,* 55 Oh. St. 596; *Hill* v. *Ely,* 5 Serg. & R. 363; *Brewer* v. *Woodward,* 54 Vt. 581. Nor does the admission of such testimony contradict or vary the terms and conditions of a written contract, as sometimes supposed; for an endorsement does not constitute a contract in writing, but rests only on a legal implication or prima facie presumption, rebuttable by proof tending to show the actual purpose of the endorsement, save of course and always when the rights of innocent purchasers are involved. *Johnson* v. *Schnabaum, supra; Winer* v. *Bank,* 89 Ark. 455; *Shaw* v. *Jacobs,* 89 Ia. 713; *Bank* v. *Savoy,* 127 Mass. 75; *Hook* v. *Pratt,* 78 N. Y. 371; *Canal* v *Banking Co.,* 20 La. Ann. 141; *Denton* v. *Peters,* L. R. 5 Q. B. 475; *Avery* v. *Miller,* 86 Ala. 495; *Galceran* v. *Noble,* 86 Ga. 367; *Carhart Brothers* v. *Wynn,* 22 Ga. 24; *McWhirt* v. *McKee,* 6 Kan. 412; *Kuntz* v. *Temple,* 48 Mo. 71; *Lawrence* v. *Stonington Bank,* 6 Conn. 521. As said in *Church* v. *Barlow,* 4 Pick. 547, "the endorsement (in blank) may operate as a transfer of the property, or as an authority to collect; it is therefore competent to show by

other evidence, where the fact becomes material, whether it operated one way or the other". *Barker* v. *Bentiss,* 6 Mass. 430. Although conceding the existence of a great contrariety of views obtaining in the different jurisdictions upon the effect of unrestricted endorsements of negotiable commercial paper, 8 Cyc. 265 admits that many authorities permit the introduction of parol evidence to explain the true contract between the original and immediate parties to the endorsement, on the theory of a presumption of a certain undertaking which is not conclusive except in favor of bona fide holders for value, and to support the text cites numerous decisions of many appellate courts.

Moreover, this doctrine does not conflict with the principles announced in *Bank* v. *Simmons,* 43 W. Va. 79, stating that possession of a negotiable instrument endorsed without restriction is prima facie evidence of ownership and that the holder secured it for a valuable consideration paid therefor in the usual course of trade or business dealings. On the contrary, the cases cited *supra* are in accord with that legal doctrine, in so far as it illuminates the principles involved in these proceedings. McCarty's possession of the endorsed instruments was prima facie evidence of good title, but not conclusive evidence; and, as our own cases cited clearly show, Hornor acquired by the garnishment proceedings no greater right in the property than was indicated by the possession which McCarty had. He advised Hornor, as the latter admits, of the relation of principal and agent existing at the time of the proposed transfer between him and Howell Brothers Company. According to the principles stated in *Bank* v. *Furniture Co., supra,* this information was amply sufficient to indicate to Hornor the necessity of an inquiry by him, before attaching the notes, as to the authority conferred by the principal on the agent to deal with the papers in his possession. The well recognized rule governing transactions between an agent and strangers regarding dealings with the property rights of the principal are as binding and controlling in relation to negotiable instruments, though endorsed without restriction, as on any other species of property. While the possession of a horse is prima facie evidence of ownership, yet if the principal entrusts the possession of

the animal to an agent for sale or use in and about the business of the owner, the horse is not subject to any civil process having as its objective application of the proceeds to the extinguishment of an indebtedness from the person in posession, although he may claim the horse as his own property. It is a generally recognized rule of law that "every person who undertakes to deal with an alleged agent is, by the mere fact of the agency, put upon inquiry, and must discover at his peril that it is in its nature and extent sufficient to permit the agent to do the proposed act, and that its source can be traced to the will of the alleged principal, particularly where he is dealing with an agent whose authority he knows to be special, or where it is his first transaction with the agent, or the circumstances connected with the agency are such as should put him on inquiry, as where it appears from the circumstances of the particular business that the interests of the agent and principal are necessarily adverse, or the authority is of an unusual, improbable or extraordinary nature. Such a person is to be regarded as dealing with the power before him, and must at his peril observe that the act done by the agent is legally identical with the act authorized by the power". 2 C. J. 562; *Bank* v. *Furniture Co.,* *supra.* The same author on page 563 further says: "The person dealing with the agent should ascertain the extent of his authority from the principal or from some other person who will have a motive to tell the truth in the interest of the principal, and he can not rely upon the agent's statement or assumption of authority".

Although, as we have endeavored to make clear, and to avoid misapprehension we repeat, these principles do not control transactions with a purchaser for value in due course of business, without notice of any defect or infirmity of the title of the transferrer of commerical paper endorsed without restriction, yet with this reservation they control the situation presented by the record before us, apart from the testimony hereafter adverted to. Hornor hesitated to act upon the mere assertion by McCarty of authority to deal with the instruments in his possession, and requested him to obtain from Howell Brothers confirmation of his pretension to ownership. Not only did Hornor hesitate; he did not presume

to act upon such assertion, although as a witness he did say he had concluded to purchase the notes upon the proposed conditions. The fact remains unchallenged, however, that he did not act upon that conclusion, but, as properly we may infer, chose rather to rely on an enforced payment of McCarty's indebtedness to him through the medium of attachment proceedings against the notes as the property of his debtor.

This brings us directly to a consideration of the evidence on which was based the decree under review, and on which, because contradictory, it is contended this court can not disturb the findings of the lower court upon the facts of the case. But, whatever effect may be ascribed to such evidence, it is obvious that, as it was the duty of Hornor to trace to its ultimate source the extent of the power and authority conferred on McCarty by Howell Brothers Company when placing the notes in his hands, the evidence in the attachment proceedings ought not to be permitted to control such principles, unless it clearly and convincingly appears that McCarty's pretended ownership is definitely established by such evidence.

Besides the information so imparted to Hornor of the fiduciary relation between Howell Brothers Company and McCarty, the latter testified that he held the notes solely for the purpose of negotiating a sale thereof for the exclusive benefit of his principal, and that at no time was he the owner thereof. These admissions were contradicted only by proof of possession and statements by him to Hornor and others of actual ownership and by his proposal to transfer them, as endorsed, to Hornor in payment of his indebtedness. But, apart from the legal requirement, due to the notice imparted, to ascertain the power and authority with which McCarty was clothed by his principal to deal with the endorsed instruments, this conduct only tends to show disloyalty to the obligations assumed by McCarty as incidental to the existing agency. It does not operate to divest the principal of his property rights in that paper. The agent's declarations and acts, when hostile or adverse to the interests of the principal, do not bind the latter. As the testimony of the agent is competent to show want of authority to transfer the paper in

payment of his indebtedness, his admissions when not sworn could only serve the purpose of affecting the credibility of his testimony. McCarty was not asked when a witness whether he had made the statements accredited to him by the impeaching witnesses. But, conceding him to be discredited, the uncontradicted testimony of other witnesses fully shows, as we think, that McCarty had no personal financial interest in the instruments entrusted to him save that conferred by his principal, the scope and extent whereof being the right to sell or collect and restore the proceeds to his principal.

But it is argued that the admission of Eli Howell that McCarty did have a commission interest in the note proceeds, and Howell's offer to allow Hornor $500 by way of settling his claim against McCarty upon payment of the difference, the admision and offer being made in the presence of James F. Allen, precludes recovery of the proceeds by Howell Brothers Company. But this testimony does not have that effect. Howell insists, apparently with reason, that except as to the compromise offer, Hornor and Allen misconceived or misunderstood what he said in that conversation, and that what he did say was that while McCarty was entitled to a commission on all sales negotiated by him and approved by them, including the Kahler and Mitchell sales and notes, he had been overpaid therefor to an amount in excess of all commissions then earned by him and unpaid. Nor is the statement of overpayment denied. This interpretation seems reasonable because of the persistency with which Howell Brothers Company have asserted the facts to be as they claim. Nor is the conclusion based on the letter of McCarty to Hornor in reference to the notes any more convincing on the question of ownership. In that letter he admitted nothing in any degree adverse to the claim of his principal. It was evidently written to accelerate the consummation of the transfer to Hornor, and not for any ulterior motive so far as disclosed. Of the offer to compromise Hornor can not reap any advantage, in view of the many authorities holding that evidence thereof is incompetent. *Williams* v. *Price,* 5 Munf. 507; *Brown* v. *Shields,* 6 Leigh 453; *Baird* v. *Rice,* 1 Call 23; Hunt on Accord & Satisfaction §99.

The alleged errors cross assigned by the appellees regard-

ing the adverse rulings upon their demurrer to the bill of Howell Brothers Company in that they ought to have come into the original suit by Hornor against McCarty and others by petition in the nature of an interpleader setting up the matters averred in their bill, and upon their motion for a jury trial, if errors they be, are immaterial because unimportant as reaching the merits of the causes. If plaintiffs in the second suit ought to have intervened in the Hornor suit, their bill should not have been (as it was not) dismissed on demurrer on the ground stated, because the court could have treated the bill as such petition without dismissing the plaintiffs out of court, leaving only the matter of costs dependent upon the final determination of the cause upon its merits. But we think the bill was not improperly filed. The grant or refusal of the application for a trial by jury of the issues involved in a chancery cause rests in the sound discretion of the court, except where that procedure is required by statute, as in respect of a contest as to the due execution and probate of wills; and the exercise of such discretion will not be deemed reversible error unless it is obviously abused.

The various reasons assigned have led us to the conviction that the decree ought to be reversed, and one entered here directing payment of the proceeds of the Kahler note and the delivery of the uncollected Mitchell note to Howell Brothers Company, with costs to appellants.

*Reversed, and decree entered for plaintiffs.*