# CHARLESTON.

INGLES v. STEALEY.

Submitted November 4, 1919.    Decided November 18, 1919.

BILLS AND NOTES—*Evidence—Witnesses—Ownership Question for Jury.*

> A case involving only a question of evidence, properly submitted to the jury.

Error to Circuit Court, Marion County.

Action by William S. Ingles against Harmel E. Stealey. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Harry Shaw,* for plaintiff in error.
*James A. Meredith,* for defendant in error.

WILLIAMS, JUDGE:

The plaintiff, W. S. Ingles, recovered a judgment against Harmel E. Stealey, defendant, in the Intermediate Court of Marion County in an action on a note, executed by defendant to Robert E. Hellem and endorsed by said Hellem to the plaintiff, and on refusal of a writ of error by the Circuit Court of said county, one was awarded by this Court. The defenses to the action are, that the note was not the property of plaintiff but belonged to the estate of the payee, who died before the institution of this action, and offsets amounting to more than the note.

The note is the first one of a series of four notes of $500 each executed by the defendant to said Hellem, dated May 11th, 1911, payable in one, two, three, and four years respectively, and represent the purchase price of an apartment house and lot in Mannington, West Virginia, known as the Buffalo Street property, purchased from said Hellem by the defendant. Hellem was a bachelor and made his home with plaintiff, his wife and his mother, during most of the time from 1904 to the 15th of October, 1912. Both plaintiff and defendant are nephews of Hellem. Plaintiff claims the note was turned over to him in part payment of a bill which he claims his uncle owed him for

room and board during the time he made his home with him, amounting to something over $1,100. On the other hand, defendant, while admitting the note and his uncle's endorsement of it to plaintiff, claims that it was endorsed only for the purpose of collection, and that plaintiff never acquired title to it. He also claims that, sometime in 1911 or 1912, he made an arrangement with his uncle whereby he assumed to pay his debts, proved that he paid debts aggregating more than the amount of the note and claims they are proper offsets to the note. He admits, however, he did not then know how much his uncle owed. Some of the offsets, we observe, were for board bills accruing after plaintiff claims the note was assigned to him. The three remaining notes executed by defendant to said Hellem are now in defendant's hands, and he admits they were never paid, but claims his uncle gave them to him at his death. On cross-examination he says a man by the name of Lehew, who lived with his uncle and nursed him in his last illness, had charge of his papers, and that his uncle delivered the notes to Lehew to be given to him after his uncle died. Lehew testified as a witness for defendant, and says nothing about the notes having been turned over to him for defendant. Lehew does swear he saw Mr. Hellem sitting on the porch one day crying, and asked him what was the matter, and he said he had gone to see Ingles (the plaintiff) and demanded the note which he had, for the purpose of putting some credits on it, and he had slapped and choked him. This is denied by the plaintiff. Lehew further says he lived three or four different times in Mr. Hellem's property, the first time five or six months, the second time about a year and the third time about two years; that the first time he lived there plaintiff collected the rent and the other times defendant collected it. Plaintiff admits that, during much of the time his uncle lived with him he was sick and unable to attend to business and, at his request, he attended to his business for him, collected a number of claims and paid a number of debts for him, but claims he turned over all money collected to his uncle, or paid it on debts according to his directions, and there is no contention that he did not properly account for all moneys so collected.

It is not plaintiff's contention that his uncle assigned him

the note sued on, at the time he endorsed it, but that he endorsed
it for the purpose of collection only, and he swears that, shortly
thereafter, about the first of July, 1913, he demanded payment
thereof from defendant, and that he then paid him $25, and said
it was all the money he had, but that he would pay the note
within a short time. Plaintiff also swears that sometime early
in 1913, after the payment of the $25 by defendant, he presented
to said Hellem his bill for room and board during the time he
had lived with him and requested him to pay it, and that he ad-
mitted owing it, and said he was not then able to pay it all,
and told plaintiff to keep the note which he had, and apply it
on the bill. The $25 paid by defendant is credited on the note
as of July 6th, 1912, and plaintiff swears he endorsed it on the
note in the presence of defendant, but defendant denies this and
swears he did not intend the money as a payment on the note, and
swears plaintiff did not then demand payment of the note but
simply demanded some money for his uncle, and he gave him
$25. There is much irreconcilable conflict in the testimony and
there is no controlling fact or circumstance, admitted or clearly
proven, that governs, thus making the issue one solely for the
jury. Plaintiff admits he had no agreement with his uncle in
regard to charges for his room and board, but proves that the
charges are reasonable, and that his uncle admitted the claim
and promised to pay it in the manner before stated. He also
admits he told his uncle he could not keep him any longer, that
he would have to find another home, and plaintiff and his wife
both say he did so because his uncle had become careless and
untidy about his room and so disagreeable in his habits that
they could not keep a servant who would attend to cleaning his
room. After leaving plaintiff's home, Mr. Hellem roomed part
of the time in his own property, and a part of the time boarded
at the home of John Hellem, and a part of the time with Mrs.
M. F. Brown. He died in Mannington in February or March,
1915.

It is assigned as error that the court improperly permitted
plaintiff's counsel, on cross-examination, to ask defendant how
he came in possession of the other three notes of the series and
whether or not he had paid them, and also erred in permitting
him to be questioned about certain other lots which he had gotten

from his uncle. These facts were proper to go to the jury, as circumstances connected with and making up the history of the entire transaction, and defendant can not complain that he was required to answer them on cross-examination. A party to a suit may, on cross-examination, be questioned in regard to any matter pertinent to the issue, whether he testified thereto in his evidence in chief or not. *McManus* v. *Mason,* 43 W. Va. 196.

The evidence respecting the three other notes was proper for the purpose of showing the circumstances under which defendant claimed title to them, and not to the particular note in suit, and as a reason why he desired to set off against the first note rather than against some of the others. In view of all the circumstances the jury had a right to consider whether or not defendant was a *bona fide* owner of the other three notes, and if they believed he was not, they might consider his set-offs as properly applicable to them rather than to the note in suit. Plaintiff and his wife testify that Hellem left their house the 15th of October, 1912, and that he told plaintiff to keep the note and apply it on his board bill, that he had no money with which to pay him then. But defendant swears that, while Hellem was still staying with plaintiff, he was passing one day and saw his uncle "Bob" as he calls him, and stopped and talked with him, and told him he had paid some of his debts, and his uncle replied, "that is all right, I will get the note and give you credit." But defendant does not remember when this was, but thinks it was about November, 1911. It will be remembered that it was long after this when defendant admits he paid $25 to plaintiff for his uncle. So that evidently he must be mistaken as to the time. He is also just as indefinite and uncertain as to the time he made the arrangement with his uncle whereby he agreed to pay his debts. It is not likely he would be paying his uncle's debts when he knew his own note had been placed in plaintiff's hands for collection from him, and he does testify that the note was placed in plaintiff's hands for collection. Defendant denied that plaintiff at any time had ever asked him to pay the note, or had ever recognized his liability thereon to plaintiff, and on cross-examination he was asked, over his objection and to which he excepted, if he had not offered to convey to plaintiff a lot in Clayton Addition in payment of the debt, and this is as-

signed as error, on the ground that it was nothing more than an offer of compromise. As we understand it, this cross-examination was for the purpose of showing that defendant recognized his liability to plaintiff and had offered to pay him by conveying him the lot. It was not for the purpose, as we interpret the record, of showing an offer of compromise. It was intended to contradict defendant's testimony that he had never at any time agreed to pay the note, and was proper for that purpose.

The court gave one instruction for the plaintiff and refused to give one for defendant, and this also is assigned as error. We have carefully considered these instructions and find no error in the court's rulings thereon. We affirm the judgment.

*Affirmed.*