G. W. KEATLEY, *Admr., etc. v.* HANNA CHEVROLET COMPANY, *a Corp., et al.*

(No. 8888)

Submitted October 3, 1939. Decided November 28, 1939.

*Samuel Price, William LaFon* and *Mahan, Bacon & White,* for plaintiff in error.

*Wolverton & Callaghan* and *Nickell Kramer,* for defendants in error.

RILEY, JUDGE:

G. W. Keatley, administrator of the estate of Eleanor Gertrude Keatley, deceased, instituted this action in trespass on the case, in the Circuit Court of Greenbrier County, against Hanna Chevrolet Company, C. W. Lewis, Ralph Hanna and Sam Hanna, to recover damages for the alleged wrongful death of decedent. To a judgment in defendants' favor, based upon a jury finding, this writ of error is prosecuted.

On March 24, 1934, the defendant, Ralph Hanna, then vice-president of the defendant, Hanna Chevrolet Company, was driving a 1933 Chevrolet coach, borrowed from one Dr. Taylor, from Lewisburg to White Sulphur Springs, over U. S. Route 60, a distance of about eight miles. Miss Keatley was seated beside him on the right side of the front seat. They were the only occupants of the car. The casualty occurred three miles east of Lewisburg, at a bridge across a creek known as Howard Creek. Before reaching the bridge, the road led down a six per cent grade and around a minus six degree right curve. For a distance of about one hundred and fifty feet before reaching the bridge, the road was substantially level and straight. Hanna testified that when the automobile reached the top of the grade leading down to the creek, he was driving about thirty-five miles per hour; and that he applied his brakes and reduced the speed to about twenty miles per hour. He further testified that the road was covered with ice, snow and slush and that rocks and shale had fallen off the cliff at the curve onto the right side of the road; that as he directed the car to the left to pass the rocks, it skidded on the ice, made two complete turns, struck the hand rail on the left of the bridge, ran off the abutment and into the mill pond; that as the car was making its second turn, Miss Keatley opened the door on her right; and that immediately following her attempt to leave the car, the right side thereof struck the metal hand rail, closing the door on her legs, breaking and mangling them, and tearing off the door.

The record discloses that the road had a concrete width of eighteen feet, with eight feet of berm on either side. A concrete curb some six to eight inches high ran along both sides of the approach to the bridge. On the bridge there were two guardrails made of 3/8-inch by 3-inch angle iron, extending along both sides of the bridge. At the end of these rails there was an "A frame" about four feet high, made of the same material. This frame was braced with cross-arms, fastened with 3/4-inch steel bolts. The automobile evidently struck the "A frame" at the near end of the bridge on the left-hand side, bending it into a "U" shape, and also bending the guard-rails in five different places, splitting them longitudinally, one slightly and the other about six inches. After the automobile struck the bridge, it fell into the creek and came to rest about six feet from the abutment, facing in a direction opposite from which it was being driven. The automobile was new, and its brakes, according to the men who tested them that morning, were in good condition.

Plaintiff's witnesses, who were on the scene shortly afterwards, testified variously as to the physical facts apparent on the ground. Three witnesses testified that they saw car tracks leading from the right-hand side of the road across to the left side. Ed Loudermilk testified that the car tracks left the right side of the road about fifty feet from the bridge; Maynard Lockhart estimated the distance at from sixty to seventy feet; and Wallace Lockhart said the distance was one hundred and fifty feet. The latter also testified that he saw mud tracks in the left berm of the road for a distance of about thirty or forty feet from the bridge. Major T. A. Harris, a professor of military science and tactics for the United States army, testified he arrived at the scene shortly thereafter and before Miss Keatley and Hanna had been removed from the mill pond. He said that ice was on the road for a distance of from seventy-five to one hundred and five feet from the bridge, and that "right on the turn coming a number of stones had rolled down on the side of the road." On cross-examination, he was asked in particular

concerning rocks on the road, and there again he testified that he saw quite a number of large rocks on the right-hand side of the road as he was going toward White Sulphur Springs.

After the action was instituted, Lewis, who had been made a party defendant because he was the president and principal stockholder of the defendant company, died, and his administrator substituted in his stead. When plaintiff rested, the administrator and the defendant, Sam Hannah, were dismissed as parties defendant and the trial proceeded on the question of the liability of the other defendants.

Error is assigned to the refusal of the court to permit W. S. Hodges, one of plaintiff's witnesses, to testify concerning a supposed conversation which he had with Mr. Lewis shortly after the occurrence of the wreck. Mr. Lewis was vouched to say that Miss Keatley was going to White Sulphur Springs to get records from the Hanna Chevrolet Company in order to have them at Lewisburg on Monday morning. The trial court's ruling evidently was based upon a misconception of the meaning and purposes of Code, 57-3-1, dealing with testimony concerning transactions with a decedent. The statute provides that "No party to any action, suit or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased * * * against the executor * * * of such person." Here, the witness, Hodges, was neither a party to this action nor interested in its outcome. The fact that he was plaintiff's son-in-law, of course, did not disqualify him. *Hollen* v. *Crim*, 62 W. Va. 451, 59 S. E. 172; *Woodrum* v. *Price*, 104 W. Va. 382, 140 S. E. 346; *Lilly* v. *Ellison*, 107 W. Va. 402, 148 S. E. 380. Moreover, as against the Hanna Chevrolet Company, Mr. Lewis' statements were admissible. The statute contemplates a personal transaction, and

here plaintiff seeks to charge the company of which Lewis was president. Generally, it has been held that conversations with the officer or agent of a party are admissible, though the officer or agent is since deceased. *Hains* v. *Parkersburg, etc., R. Co.,* 75 W. Va. 613, 84 S. E. 923; *Board of Education* v. *Harvey,* 70 W. Va. 480, 74 S. E. 507. "A party to a contract is competent to testify in his own behalf against a corporation in relation to a personal transaction between himself and a deceased officer of such corporation." Pt. 1, Syl., *Keystone Coal & Coke Co.* v. *Hall,* 83 W. Va. 287, 98 S. E. 572. See also, *Pickens* v. *O'Hara,* 120 W. Va. 751, 200 S. E. 746.

The second assignment of error is to the refusal to admit into evidence two paragraphs of a proposed contract of compromise executed by Hanna Chevrolet Company in which the other parties were G. E. Keatley and Vera Keatley, the brother and sister of plaintiff's decedent. The parts of the contract sought to be introduced are parts of the preamble and read:

> "WHEREAS, Miss Eleanor Gertrude Keatley was an employee of the Hanna Chevrolet Company, of which C. W. Lewis is chief stockholder and president, which company is situate at Lewisburg, Greenbrier County, and,
>
> "WHEREAS, The said Miss Eleanor Gertrude Keatley lost her life while in the employ of said company, on or about the 26th day of March, resulting from an automobile accident occurring on March 24, 1934."

Generally, an offer of compromise is inadmissible in this state. *Averill* v. *Hart & O'Farrell,* 101 W. Va. 411, 132 S. E. 870; *Howell* v. *McCarty,* 77 W. Va. 695, 88 S. E. 181; *Wade* v. *McDougle,* 59 W. Va. 113, 52 S. E. 1026. However, an independent admission of fact in an offer or proposed contract of compromise is admissible. *Parkersburg & M. Sand Co.* v. *Smith,* 76 W. Va. 246, 85 S. E. 516, Ann. Cas. 1918E, 449; *Lovett* v. *West Virginia Central Gas Co.,* 73 W. Va. 40, 79 S. E. 1007. "If a statement forming a part of an offer of compromise or made in the course of negotia-

tions to effect a settlement is an admission of an independent fact pertinent to an issue between the parties, it is admissible on the trial of such issue, unless it be so closely connected with the offer of compromise as to be inseparable therefrom, is a tentative or hypothetical statement as distinguished from a definite statement of fact, or is expressly made without prejudice or indicates that it is made in confidence that a compromise will be effected." 20 Am. Jur., Evidence, sec. 566. See also, note 2, *Erickson* v. *Webber,* 58 S. D. 446, 237 N. W. 558, 80 A. L. R. 914. The part of the contract sought to be introduced here contains no indicia of compromise, and would not in the least inform the jury that it was part or parcel of any agreement to compromise. We think the court erred in refusing the proffered evidence.

Plaintiff also cites error to the trial court's refusal to admit the testimony of plaintiff's witnesses in rebuttal, to the effect that when the car was approaching the bridge there were no rocks or stone on the road. In this regard, we must look to the testimony of Major Harris. On direct examination, he testified to the presence of rocks on the road, and was cross-examined in detail as to this matter. Of course, plaintiff is not bound by this testimony, though given by one of his own witnesses. In this state, "though a party cannot impeach a witness called by him, he is not bound by everything such witness may say." *Culp* v. *Virginian Ry. Co.,* 80 W. Va. 98, 92 S. E. 236. Accordant: *Stout* v. *Sands,* 56 W. Va. 663, 49 S. E. 428; *Nash* v. *Fidelity-Phenix Fire Ins. Co.,* 106 W. Va. 672, 676, 146 S. E. 726, 63 A. L. R. 101, and note at 107. At the conclusion of Major Harris' testimony, plaintiff then and there had the right to introduce whatever obtainable evidence he saw fit to the effect that there were no rocks on the road. But having failed to do so, and his case having been rested, it was within the sound discretion of the trial court to refuse the opening of the question by plaintiff on rebuttal. Generally, the conduct of trials, subject to the well established rules of practice and procedure, lies within the sound discretion of the trial judge. This discretion, on the

admissibility of evidence in rebuttal which could and should have been introduced by the plaintiff in chief, operates to a great extent. In general, this position is supported by the following West Virginia cases: *State* v. *Williams,* 49 W. Va. 220, 223, 38 S. E. 495; *Clarke* v. *Ohio River R. Co.,* 39 W. Va. 732, 749, 20 S. E. 696; *Johnson* v. *Burns,* 39 W. Va. 658, 663, 20 S. E. 686; *Lewis* v. *Alkire,* 32 W. Va. 504, 9 S. E. 890; *Bowyer* v. *Knapp & Martin,* 15 W. Va. 277.

Certain remarks made by the trial judge to plaintiff's attorney during the course of the trial and in the hearing of the jury are also cited as error. When plaintiff sought to introduce in rebuttal the testimony of his witnesses as to rocks, shale and ice on the road, the trial court said: "You are bound by your own witness. You had another witness on the stand who testified there was shale on the road." And also when one of plaintiff's attorneys sought to press inquiry concerning Mr. Lewis' purported conversation with Hodges, the court said: "* * * I am not going to permit any further inquiry along that line. The answers are improper, therefore, your questions are improper. Please don't try to get any more such evidence in the record." Remarks such as these are dangerously apt to create prejudice in the minds of the jury. However, plaintiff's counsel did not object at the time they were made, and no motion for a mistrial or request that the jury be instructed to disregard them appears in the record. "A remark of the trial court, not objected to when made, is ordinarily not subject to appellate review." *State* v. *Bragg,* 105 W. Va. 36, 141 S. E. 400, Pt. 2 Syl.

Error is grounded upon the giving of defendants' instructions Nos. 2, 3, 4, 5, 7, 8 and 11. The record here discloses that no exceptions were made to these instructions at the time they were given, as provided by subparagraph (e) of Rule VI of the Rules promulgated by this Court, under Chapter 37, Acts West Virginia Legislature 1935. This rule provides in part: "Exceptions to the refusal to grant or to granting the same or to modified instructions shall be made at the time, or the same shall

be deemed to be waived." 116 W. Va. lxiii. See also, *Rice v. Builders Material Co.,* 120 W. Va. 585, 2 S. E. (2d) 527; *Smith v. Morrison,* 120 W. Va. 481, 199 S. E. 689. Because, however, this case must be retried upon remand, it will not be amiss to consider, parenthetically, the several instructions complained of.

Instructions Nos. 2 and 3 are erroneous in that they require plaintiff's recovery to be based upon the proof that defendants' negligence was the *"controlling proximate cause."* Instruction No. 4 seems to be without error.

Instruction No. 5 submits to the jury the question whether Miss Keatley was guilty of contributory negligence. True, contributory negligence is a bar to recovery, but under no condition can a party complain of the actions of another person when those actions are such as an ordinary prudent person, under like circumstances, would make and are prompted by an emergency which he himself has created. *O'Dell v. Universal Credit Co.,* 118 W. Va. 678, 191 S. E. 568; *Oldfield v. Woodall,* 113 W. Va. 35, 166 S. E. 691; *Menafee v. Monongahela Railway Co.,* 107 W. Va. 245, 148 S. E. 109; *Normile v. Wheeling Traction Co.,* 57 W. Va. 132, 145, 49 S. E. 1030, 68 L. R. A. 901. This case presents a striking example for the application of this rule. When the car was going rapidly toward the bridge and the mill pond, surely it cannot be said that Miss Keatley was negligent when, through her fear of impending injury, she tried to jump out of the car. For us to hold that the jury had a right to determine whether or not this conduct was negligent would abrogate the rule and prevent its application in cases yet to follow. As a matter of law, it can safely be said that under the harrowing and perilous circumstances in which Miss Keatley found herself, her conduct was not such negligence as to preclude recovery. The vice of instruction No. 7 is apparent from what has already been said. This instruction likewise presents to the jury the question of Miss Keatley's negligence.

Instruction No. 8 informs the jury that Hanna's duty was to drive his automobile in a careful manner along the highway. This part of the instruction, we think, is indefinite. His duty is to drive in a careful manner, having regard to the condition of the road. We do not say now that the instruction did not impliedly so tell the jury. It is simply suggested that this instruction, if sought to be used on the new trial, should be modified accordingly.

In passing, we have noted that no objection is made here to the dismissal as to the defendant administrator and Sam Hanna. Clearly, the latter was not a proper party, under any possible theory of the case, and Mr. Lewis' personal representative, of course, would not be personally liable simply because Lewis had been president and principal shareholder of the company; and the theory that the White Sulphur Springs garage was operated as a partnership is not sustained by the instant record. The lease at White Sulphur Springs was made to the Hanna Chevrolet Company; a number of conditional sales contracts between the Hanna Chevrolet Company and various purchasers, which recite that the contract was made at White Sulphur Springs, were introduced in record; the water rents were billed to and paid by the defendant company; and the assessment books for the town corporation do not disclose the assessment of any property in the name of the claimed partnership or the defendant corporation.

For the errors heretofore pointed out, we are of opinion that the judgment of the trial court should be reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*