M. David Shaeffer

*v.*

Robert O. Burton, *d/b/a* Robert O. Burton, *Inc., et al.*
(No. 12621)

Submitted May 2, 1967.        Decided July 11, 1967.

*McCamic & McCamic, Jeremy C. McCamic,* for appellants.

*Gompers & Buch, Joseph A. Gompers,* for appellee.

HAYMOND, JUDGE:

This is a civil action instituted in the Circuit Court of Ohio County May 14, 1964, in which the plaintiff, M. David Shaeffer, seeks to recover from the defendants, Robert O. Burton, doing business as Robert O. Burton, Inc., sometimes herein referred to as the defendant, and Robert O. Burton, Inc., a corporation, the sum of $2400.00 for services rendered by the plaintiff to the defendants during the year 1962 under a verbal contract entered into between the parties in that year. The pleadings in the action consist of the complaint, the answer, the amended answer and the counterclaim of the defendants, in which they seek a recovery from the plaintiff in the amount of $7500.00 for loss of expenses, fees and clients sustained by the defendants because of the failure of the plaintiff to comply with the verbal agreement between the parties, and the answer of the plaintiff to the counterclaim denying the allegations of the counterclaim.

Upon the foregoing pleadings and the testimony of the plaintiff in his behalf and the testimony of Robert O. Burton and Kenneth Bemis, Jr., in behalf of the defendants, the case was tried by a jury which returned a verdict in favor of the plaintiff for $1500.00. The circuit court, having overruled motions of the defendants for a directed verdict, on July 22, 1965 rendered judgment for the amount of the verdict with interest and costs and by its final judgment rendered January 7, 1966, overruled the motion of the defendants for a new trial. From the foregoing judgment this Court granted this appeal upon the application of the defendants.

The plaintiff, whose office is located in the city of Wheeling, is an experienced mechanical engineer and is engaged in the work of designing heating, air conditioning, plumbing, electrical distribution, communi-

cations and lighting systems. About one-half of his work is performed in connection with commercial buildings and in such instances he works with an architect who designs buildings. The defendant Robert O. Burton is an industrial designer of buildings and has designed approximately sixty restaurant buildings in various parts of the country which are operated in connection with the Big Boy chain of restaurants. His office is located in Chicago and he is the president of the corporate defendant Robert O. Burton, Inc.

The plaintiff testified that in the year 1962 when he was in Burton's office in Chicago Burton asked the plaintiff to design the mechanical and electrical work, consisting of plans or designs for plumbing, heating, air conditioning, electrical and lighting work for a one building project in Baltimore, Maryland, which was similar to a Big Boy restaurant; that at the time the building had not been built; that Burton furnished the plaintiff with partial plans of a similar building that had been constructed in Milwaukee which the plaintiff had not seen; that the plaintiff was dealing only with Burton and not with any contractor or the owner of the project; that the plaintiff and the defendants agreed that the plaintiff should perform the services for a three per cent commission upon the lowest acceptable bid of a contractor for constructing the project; that the plaintiff at the time estimated the cost of the work designed by him at $80,000.00 and though he discussed the project in detail with Burton he did not disclose the amount of his estimate; that he prepared the requested designs and that the amounts on each bid on the plans and specifications prepared by the plaintiff amounted to $19,794.00 for the plumbing work, $15,-500.00 for the electrical work, and $33,138.00 for the heating, air conditioning and ventilating work, or an aggregate of $68,432.00, and that three per cent of that figure, which represented the lowest acceptable bid, was $2,052.96; that in connection with the work Burton did not submit to the plaintiff any budget or limit as

to the cost of the mechanicals designed by the plaintiff for the proposed building; that the designs prepared by the plaintiff were submitted to Burton, who informed the plaintiff that he thought the plans were a very fine set of plans, that is was a fine job, that he was very happy and sent them on to the owner, and that Burton never at any time complained that the plans were excessive or suggested any change or modifications before bids were made on the plans; that after such bids had been made on the plans Burton came to plaintiff's office with a copy of the plans and told the plaintiff that bids had been received and that the job ran too high and required more money than the owner wished to pay and that Burton submitted to the plaintiff suggested changes for him to make in the plans; that the plaintiff replied that he had not been given a budget on the job, that he did what he thought was best in the interest of the owner, that he had done all his work during a period of more than six weeks, that the defendants had taken the plans and had sent them out for bids and that the plaintiff was entitled to payment; that this occurred at a meeting between the plaintiff and Burton in the early part of 1963 after the bids had been received and that Burton told the plaintiff that "he would put in for payment to the owner and have the owner send me some money."; that Burton never at any time spoke to the plaintiff about any designs for a second building; that after the meeting in 1963 the plaintiff refused to discuss the matter of modifying his plans until he had been paid for the work he had done, and not having received any money, he did no further work; that not having had any further word from Burton the plaintiff sent him a bill for $2400.00, being three per cent of $80,000.00; that plaintiff had assumed that the cost would be from $60,000.00 to $80,000.00 and that he used the higher figure; that an acceptable bid did not mean a bid that was acceptable to the contractor or the owner or any one in particular; that it is a phrase used in the trade; and that the lowest acceptable bid received means that the contractor who sub-

mits the bid is acceptable to the owner and the architect.

On rebuttal the plaintiff also testified in effect that portions of the plans prepared by him were copied in the redesigned plans which were used in the construction of the one building and that if his work had been limited to a budget of $45,000.00 he could not have performed it to conform to the plans of the Milwaukee building.

Kenneth Bemis, Jr., a witness in behalf of the defendants, who is engaged in the restaurant business, testified that he was the holder of a franchise to operate Big Boy restaurants in Washington and was lessee or prospective lessee of two restaurant buildings to be constructed in Baltimore; that he employed the defendant Burton to design the plans for both buildings; that the plans were based on budgets which for one building was $125,000.00 and for the second building was $150,000.00, and that Burton was to receive four per cent of the construction cost of each building for his services; that plans submitted by Burton for one building, including the plans prepared by the plaintiff, required a construction cost for the building of $172,-000.00 which was more than the owner, Taylor Avenue Development Company, a building contractor, was willing to pay; that because of the high cost the plans had to be revised and after conferences with Burton and the owner the total construction cost on the basis of the revised plan was $142,000.00 and that on that basis the cost of the work designed by the plaintiff was reduced to $47,000.00; that plaintiff's plans, with certain changes to reduce the construction cost of the mechanicals designed by him to $47,000.00, were given to Burton to be resubmitted to the plaintiff for the suggested changes and modifications; that some of the reasons for the higher construction cost for the designs made by the plaintiff were that he had used stainless steel ducts instead of galvanized or tinplated ducts and that he had designed a built up air conditioning unit instead of a package unit and a twenty five ton instead of a twenty ton unit; that as the changes and modifications

were not made by Shaeffer the plans were redesigned by another designer on the basis of the cost of $47,000.00 and that one building was constructed at the total bid of $142,000.00; that the dealings of this witness were not with the plaintiff but were with the defendant Burton; that none of the plaintiff's plans was used and that the witness, who as lessee was required to submit architectural plans for the two proposed buildings, paid a person other than the plaintiff for the redesigned plans; that though it was originally intended that Burton was to design the two buildings and though the first building was completed at the increased cost of $142,000.00 instead of the intended cost of $125,000.00, the second building was not constructed because when ''we were just about ready to sign up a lease for the second one when these high prices came in which frightened both us and the other lender off because it would be so far out of proportion and we couldn't afford to get into something like that and we just backed away from the second lease at that time.''

In his examination in chief the defendant Burton testified that in September 1962 he met the plaintiff in Chicago in connection with another project and at that meeting discussed buildings to be constructed in Baltimore and that he asked the plaintiff to draw the mechanical engineering for a Big Boy building based on a Milwaukee plan; that the plans were to be used to build two buildings in Baltimore; that the plaintiff was to be paid three per cent of the cost of the mechanicals on the buildings based on a budget of between $20,000.00 to $25,000.00 for air conditioning, $10,000.00 for plumbing, and $10,000.00 for electrical mechanicals; that the defendant furnished the plaintiff with plans of the Milwaukee building and other applicable plans and original drawings of plumbing and electrical lighting layouts, and other structural and architectural vertical and floor plans; that the plaintiff subsequently drew the plans; that when the plans were finished the plaintiff showed the defendant a copy and sent the rest of the plans to Mr. Bemis in Washington; that the plans were placed for bids and that the bid

received was in the amount of $172,000.00; that the amount was too high, and that the plaintiff, Bemis and the contractor in Washington tried to locate the excess and broke down the $68,000.00 cost of the mechanicals in the plans prepared by the plaintiff; that Burton and Bemis then met with the builder, a New York development corporation, in its office in New York, where the plans were examined by mechanical and electrical engineers, plumbers and construction men, and changes in the plans were recommended to reduce the cost to about $45,000.00; that after that meeting the defendant met with the plaintiff and discussed the changes in the plans; that the plaintiff was supposed to correct the plans and send them to the defendant's client in Washington; that the plaintiff never made the suggested corrections and that the defendants never had a final set of mechanical drawings for use in the construction of the building and that the witness never received any corrected plans from the plaintiff; that to the defendant Burton the term "acceptable" meant "a set of drawings or bid that comes in that a man is financially able to build."; that when the defendant Burton came to Wheeling from the meeting in New York with the plans and the suggested changes he expected the plaintiff to make the suggested corrections; that when he hired the plaintiff in Chicago and made the agreement with him he expected the plaintiff to design a set of mechanical drawings based on the Milwaukee building on a budget of approximately $45,000.00 and to complete the job to the satisfaction of the owner; and that he did not feel that he owed the plaintiff anything because the defendant never got what he ordered from the plaintiff.

On cross-examination the defendant Burton testified that during the period between September 1962 and the receipt of the plans from the plaintiff in December 1962 or January 1963, and while the plans were being prepared, the defendant did not request the plaintiff to make any revision in them; that the plans were submitted for bids almost immediately after the plans were received and that the defendant never notified

768

the plaintiff of all the bids; that the lowest bid was so high that the situation was investigated in Washington and checked in New York and that he then told the plaintiff of the high figure at a meeting a short time after February 15.

During his cross-examination the defendant Burton was shown by the attorney for the plaintiff a letter dated September 24, 1963 from the defendant to the attorney for the plaintiff and was asked to read the letter, which he did. The letter which was written by the defendant Burton and bears his signature was in response to a letter from the attorney for the plaintiff dated September 4, 1963, in which the claim of the plaintiff in the amount of $2400.00 was described and the defendant was requested to inform the attorney why payment had not been made.

After the letter dated September 24, 1963, was exhibited to the witness and the witness was interrogated concerning certain statements in it, the letter was admitted in evidence though never exhibited to the jury and was subsequently withdrawn by the attorney for the plaintiff but a copy is incorporated in and made a part of the record. The letter in substance stated that the plaintiff and the defendant Burton agreed to a three per cent fee on the cost of the mechanical engineering work which was designed to meet a budget; that the plaintiff started his work in December 1962; that the plaintiff was supposed to design air conditioning, heating, ventilating, plumbing and electrical systems to meet a particular budget; that the final drawings and specifications were so elaborate that the lowest bids on the items were twice as high as they should have been, causing extremely costly delays and conferences; that details for revising the plans to meet the budget were supplied to the plaintiff; that the revisions were never made and that the defendant's client was left with a set of plans which he could not use and in desperation had the work done locally; and that for these reasons payment had been delayed by the defendant's client. The final sentences in the letter contained this language: "I am sure that if we get to-

gether on my next visit to Wheeling, we can settle this problem amicably. In spite of the above problem, I have a great respect for David Shaeffer both personally and professionally.'' The letter also contained the statements that ''On January 17th I sent an invoice to my client requesting a retainer of $1,000.00 to be paid to M. David Shaeffer and Assoc. without having received any billing from them'' and ''We felt that they should be compensated for their work, but not to the extent of their billing.''

Over the repeated objections of the attorney for the defendants the defendant Burton was asked these questions and gave these answers concerning statements in the letter: ''Q. I will ask you to state whether or not you made a request to see that Mr. Shaeffer was paid a thousand dollars? A. Yes. Q. You did so on or about January 17, 1963. You felt Mr. Shaeffer was entitled to some money, is that right? A. At that time, yes. Q. And on September 24, 1963, you further felt that Mr. Shaefer was entitled to some money, did you not? Q. That is the date of the letter you just read? A. Can I explain? The Court: This is the same as before. If you can answer it yes or no, do so, and then explain your answer. If you can answer it yes or no. Q. I am not talking about any certain amount. I am asking you whether or not on September 24, 1963, whether or not you felt he was entitled to some money for services he performed on this job? A. Yes. The Court: You can explain. A. I wrote this in a letter to David without the advice of counsel, incidentally, and at that time I had no—I had not realized what a bad situation this thing had gotten into as far as my client in Baltimore was concerned, and the fact that the drawings had never been sent, or the fact that they had not used any part of David Shaeffer's drawings in the mechanical end of this building. Q. I am going to ask you if this is the letter you referred to which you just testified—A. Yes. Q. You said you wrote Mr. David Shaeffer? A. Without counsel.''

After all the evidence had been introduced and be-

fore the case was submitted to the jury the plaintiff moved the court to dismiss the counterclaim of the defendants, which motion the court overruled but limited any recovery by the defendants on the counterclaim to one per cent of the budgetary figure of $45,000.00 or $450.00, and the defendants made a motion for a mistrial on the ground that admission of the evidence of the defendant Burton with respect to the contents of the letter written by him related to an unaccepted offer of compromise and for that reason was inadmissible and a motion for a directed verdict for the defendants on the grounds that the contract in question was between Shaeffer and Bemis, a disclosed principal, and not with the defendants, and that the plaintiff had failed to prove any contract between the parties or any breach by the defendants, both of which motions the court overruled.

The errors upon which the defendants rely for reversal are the action of the circuit court(1) in admitting evidence of an unaccepted offer of compromise; (2) in refusing to direct a verdict for the defendants on the ground that the plaintiff had failed to prove any contract between him and the defendants, performance by the plaintiff, or any breach of such contract by the defendants; and (3) in limiting any recovery on the counterclaim to the sum of $450.00.

The well established and widely recognized general rule is that an unaccepted offer to compromise a disputed claim is not admissible as evidence against the party making such offer. Such an offer does not constitute an admission on the part of the person making it, whether the offer was made orally or in writing, or whether it was made directly to the opposing party or through his agent. The rule is based upon public policy which favors the settlement of disputed claims out of court and the courts treat such offer of compromise by a party as an effort to obtain peace rather than as an admission of liability or of the validity of the claim of the other party. 29 Am. Jur. 2d, Evidence, 629. See also *Wood v. Wood,* 126 W. Va. 189, 28

S.E. 2d 423; *Keatley v. Hanna Chevrolet Company,* 121 W. Va. 669, 6 S. E. 2d 1; *Averill v. Hart & O'Farrell,* 101 W. Va. 411, 132 S. E. 870; *Howell v. McCarty,* 77 W. Va. 695, 88 S. E. 181; *Wade v. McDougle,* 59 W. Va. 113, 52 S. E. 1026. The letter in question can not be considered as an unaccepted offer of compromise. The statements in it to the effect that the defendant Burton sent an invoice to his client requesting a retainer of one thousand dollars to be paid to the plaintiff and that the defendant Burton felt that the plaintiff should be compensated for the work but not to the full extent of the bill and concerning which the defendant Burton was interrogated on cross-examination are not a part of an unaccepted offer of compromise and his statements that he made a request to see that the plaintiff was paid one thousand dollars and that he felt that the plaintiff was entitled to some money for services which he had performed were not inadmissible. The contents of the letter show clearly that it did not contain an offer of compromise. There is no reference to a compromise and there is no suggestion or request for any meeting for that purpose. It merely states, in effect, that if the plaintiff and the defendant Burton should get together, without requesting or suggesting any meeting for that purpose, on his next visit to Wheeling, he and the plaintiff could settle the prolem amicably. It expresses only the opinion of the defendant with respect to a future settlement of the claim. None of the statements concerning payment to the plaintiff is conditional or hypothetical in character and there is no indication that any of them was made for the purpose of seeking a compromise or should be considered as a tentative or conditional basis of settlement. On the contrary they constitute direct, express and unconditional admissions of the stated facts and show an intention to admit liability for at least a part of the plaintiff's claim. Such admissions do not constitute a compromise offer and are admissible as admissions against interest.

It has been held that the determining factor as to whether a statement is in the nature of a settlement

proposal or offer, so as to exclude it from evidence, is whether the form of the statement is explicit or absolute, and if its purpose is to declare a fact really to exist, rather than to concede a fact hypothetically in order to effect a settlement, the statement is admissible. *Gallagher v. Viking Supply Corporation,* 3 Ariz. App. 55, 411 P. 2d 814. The statements in question indicate no intention or attempt to effect any compromise of the claim of the plaintiff; and judged by the foregoing standard they were not a part of an offer of compromise and were properly admitted as admissions against interest. They do not in any wise concede any facts for the purpose of settlement or compromise.

In *Averill v. Hart & O'Farrell,* 101 W. Va. 411, 132 S. E. 870, this Court, in considering whether testimony of the plaintiff that the defendant told him that they would "try and get together and make a settlement," said that such statements did not constitute an incompetent and inadmissible unaccepted offer of compromise and held in point 2 of the syllabus that "While testimony offered to show an unaccepted offer of compromise is incompetent and inadmissible, where it appears that such statements were made without any attempt to effect any compromise between the parties, such testimony is admissible under the well-established rule that the declaration of parties to the record against interest may be shown in evidence." In *Kelly v. Steinberg,* 148 Cal. App. 2d 211, 306 P. 2d 955, the opinion of the court, after expressly recognizing the general rule that a mere offer of compromise is not admissible in evidence, contains this language: "The statement of a party against whom a claim is made that he is willing to settle the claim, when not connected with an offer of compromise, may be proved as an admission against interest. The rule which excludes offers of compromise does not apply to statements which are in nowise connected with any attempt to compromise." In *Ingles v. Stealey,* 85 W. Va. 155, 101 S. E. 167, the defendant contended that a question propounded to him on cross-examination as to whether he had offered to convey a parcel of land in payment of the

debt involved in the action constituted an offer of compromise. This Court rejected that contention and stated that the question was intended to contradict defendant's testimony that he had never at any time agreed to pay the note and was proper for that purpose.

It is clear that the statements in question did not constitute or relate to any offer of compromise or settlement and were not made for such purpose. They are, therefore, not within the rule that excludes and renders inadmissible an unaccepted offer of compromise of a disputed claim and the circuit court did not commit error in admitting the statements relating to the contents of the letter to which the defendant Burton testified on cross-examination.

The evidence with respect to the contents of the oral agreement between the parties and the performance of the contract by the plaintiff is conflicting and presents a question for jury determination. By its verdict the jury has determined those factual questions in favor of the plaintiff to the effect that the mechanicals designed by the plaintiff were not limited by any fixed budgetary amount and that his compensation of three per cent of the lowest acceptable bid meant the lowest bid made by an acceptable contractor and not a bid that was acceptable to the industrial designer or the owner. The verdict of the jury is amply supported by competent evidence and will not be disturbed upon this appeal. It is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses is conflicting. *Sydenstricker v. Vannoy,* 151 W. Va. 177, 150 S. E. 2d 905; *Poe v. Pittman,* 150 W. Va. 179, 144 S. E. 2d 671; *Campbell v. Campbell,* 146 W. Va. 1002, 124 S. E. 2d 345; *Graham v. Crist,* 146 W. Va. 156, 118 S. E. 2d 640; *Overton v. Fields,* 145 W. Va. 797, 117 S. E. 2d 598; *Earl T. Browder, Inc. v. The County Court of Webster County,* 145 W. Va. 696, 116 S. E. 2d 867; *Moore v. United Benefit Life Insurance Company,* 145 W. Va. 549, 115 S. E. 2d 311; *Lewis v. Mosorjak,* 143 W. Va. 648, 104 S. E. 2d 294; *Workman v. Wynne,* 142 W. Va.

135, 94 S. E. 2d 665; *Davis v. Sargent,* 138 W. Va. 861, 78 S. E. 2d 217; *Gilkerson v. Baltimore & Ohio Railroad Company,* 129 W. Va. 649, 41 S. E. 2d 188; *Yuncke v. Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Thorn v. Addison Brothers and Smith,* 119 W. Va. 479, 194 S. E. 771. A jury verdict based on conflicting testimony involving the credibility of witnesses and approved by the trial court, will not be set aside by this Court as contrary to the evidence unless it is clearly wrong or without sufficient evidence to support it. *Miners' and Merchants' Bank v. Gidley,* 150 W. Va. 229, 144 S. E. 2d 711; *Poe v. Pittman,* 150 W. Va. 179, 144 S. E. 2d 671; *Levine v. Headlee,* 148 W. Va. 323, 134 S. E. 2d 892; *Walker v. Monongahela Power Company,* 147 W. Va. 825, 131 S. E. 2d 736.

The circuit court should have sustained the motion of the plaintiff at the conclusion of the evidence to dismiss the counterclaim of the defendants, instead of limiting the amount of any recovery upon such counterclaim to the sum of $450.00. The evidence fails to show that the defendants sustained any loss of expenses, fees or clients as charged in the counterclaim. Perhaps the principal item for which recovery was sought on the counterclaim was the item of four per cent upon $150,000.00, the estimated construction cost of the second building, which the defendants claim was caused by the failure of the plaintiff to perform the contract between him and the defendants. As to that item the evidence of the defense witness Bemis was that the second building, the construction cost of which was to be $150,000.00, was not constructed because of the high prices then in effect which, of course, were in no wise attributable to or caused by any action of the plaintiff. As to that item the defense witness Bemis gave this testimony: ''Q. Mr. Bemis, you mentioned two buildings. Was Mr. Burton to design you two buildings? A. Right. At that time we were planning to put two of the Burton buildings in Baltimore, and we were just about ready to sign up a lease for the second one when these high prices came

in which frightened both us and the other lender off because it would be so far out of proportion and we couldn't afford to get into something like that and we just backed away from the second lease at that time. Q. What was Mr. Burton to be paid for those two buildings? A. Four per cent of the cost of construction. Q. What was the cost of the construction to be? A. $125,000.00 on the first building, and we were figuring on putting in a more elaborate set-up in the second building and were going to go $150,000.00 on that." Though it was error to deny the motion of the plaintiff to dismiss the counterclaim and instead to fix a limit of $450.00 for any recovery upon the counterclaim, the action of the circuit court in that respect was not prejudicial but was unduly favorable to the defendants and the verdict of the jury will not be disturbed because of such erroneous action of the circuit court.

The judgment of the circuit court, being free from prejudicial error, is affirmed.

*Affirmed.*