## Cincinnati, New Orleans & Texas Pacific Railway Company v. Claybourne's Administrator.

(Decided March 22, 1916.)

### Appeal from Mercer Circuit Court.

1. Master and Servant—Federal Employers' Liability Act—Action by Injured Employe—Death of Employe—Revivor of Action—Reversal.—Where an injured employe brings suit under the Federal Employers' Liability Act for damages and alleges in his petition that he has dependent on him a wife and minor child, and the employe dies and the petition for revivor reaffirms each and every allegation contained in the petition, and the action is revived in the name of the administrator of the decedent, and the evidence shows that he was survived by a widow and minor child, a judgment in favor of the administrator will not be reversed because the petition for revivor failed to allege in terms that the decedent was survived by a widow and minor child and to ask a revivor for their benefit, or because the order of revivor itself did not provide that the action was revived for their benefit.

2. Trial—Verdict—Apportionment of Damages—Error.—Where, in an action brought by an injured employe for damages under the Federal Employers' Liability Act, the employe dies and the action is revived in the name of his administrator for the benefit of his widow and child, a general verdict for the benefit of the widow and minor child may be returned by the jury without apportioning the damages between the beneficiaries.

3. Master and Servant—Assumption of Risk.—A servant does not assume the risk growing out of the master's negligence unless the conditions and danger therefrom are known and appreciated by him, or are so obvious that an ordinarily prudent person, under the circumstances, would have observed and appreciated them.

4. Master and Servant—Assumption of Risk.—A railroad trackman injured by a piece of coal thrown from a negligently loaded tender of a passing engine does not assume the risk of injury, although aware of the fact that coal had fallen from improperly loaded tenders on other occasions.

5. Trial—Instructions—Refusal—Error.—In an action for damages for personal injuries, evidence considered and held that an instruction telling the jury to find for the defendant unless they believed that decedent's insanity was caused by the blow which he received, was properly refused.

6. Damages—Excessive.—In an action originally brought by an injured employee to recover damages for mental and physical suffering and loss of time, and afterwards revived in the name of his administrator for the benefit of his widow and child, evidence considered and held that a finding of $2,000.00 in favor of plaintiff was not excessive.

7. Trial—Verdict—Number of Jurors Who Can Render Verdict.—Under Kentucky Statutes, sec. 2268, providing that in all trials of civil actions in the circuit courts three-fourths or more of the jurors concurring may return a verdict, three-fourths or more of the jury may return a verdict in an action under the Federal Employers' Liability Act.

E. H. GAITHER and JOHN GALVIN for appellant.

JOHN W. RAWLINGS, ROBERT HARDING, EMMET PURYEAR and E. M. HARDIN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action for damages for personal injuries, arising under the Federal Employers' Liability Act, Allen Claybourne's administrator recovered of the Cincinnati, New Orleans & Texas Pacific Railway Company a verdict and judgment for $2,000.00. The company appeals.

Briefly stated, the facts are as follows: Claybourne was a section hand and had been in the company's em-

ploy for a number of years. On the morning of the accident, which occurred in the month of November, 1912, he and other section hands, while engaged in tamping the track at a point south of Burgin, were directed by the section foreman to remove a hand car from the track for the purpose of preventing a collision with an approaching passenger train. The car was removed and Claybourne and the other hands stationed themselves a few feet from the track and waited for the train to pass. The train was moving at a speed of about forty-five miles an hour, and as the engine passed the men several pieces of coal fell from the tender. One of these pieces struck Claybourne behind the ear and injured him. His wife claims that she also found a soft place in the top of his head. Thereafter Claybourne worked intermittently until some time in February, when he was laid off indefinitely and never returned to work. In June following he was adjudged insane and sent to the Eastern Kentucky Hospital at Lexington, where he died in November, 1913.

This suit was originally brought in Claybourne's lifetime by his committee, the State Bank & Trust Company of Harrodsburg. The petition alleged that plaintiff had a wife and minor child dependent on him. After Claybourne's death, the State Bank & Trust Company qualified as his administrator and filed a petition for a revivor. The petition for revivor made the allegations of the original petition a part thereof and alleged that the original action survived to plaintiff as the personal representative of the decedent "for the benefit of his estate," and that plaintiff was entitled to have the action revived and to prosecute same in its name as administrator. The company's demurrer to the petition for revivor was overruled and the following order entered:

"It is now adjudged by the court plaintiff is entitled to the relief sought in the petition for revivor, and it is ordered that this action be, and the same is now, revived in the name of State Bank & Trust Company, as administrator of Allen Claybourne, and shall proceed to trial upon the pleadings and issues heretofore made between plaintiff and defendant."

The company insists that the petition for revivor stated no cause of action, because it is alleged that the action for the personal injury to Claybourne survived to the plaintiff as representative of Claybourne "for

the benefit of his estate." In this connection it is argued
that the trial court had no authority to revive the action
for the benefit of the estate, but only for the benefit of
the decedent's widow and minor child. That the action
was revived for the benefit of the decedent's estate and
not for the benefit of his widow and child, it is claimed,
is shown by the fact that the instructions authorized a
finding in favor of the administrator and did not require
the jury to apportion the damages between the wife and
child.

Under the Federal Employers' Liability Act of April
22nd, 1908 (35 Stat. at L. 65, chap. 149, U. S. Comp.
Stat. Supp., 1911, p. 1322), the cause of action given the
injured employe did not survive his death, but died with
him. Michigan Central Railroad Co. v. Vreeland, 227
U. S. 58, 57 L. Ed. 417. But Congress remedied this
defect by adding to the act section 9, which provides:
"That any right of action given by this act to a per-
son suffering injury shall survive to his or her personal
representative, for the benefit of the surviving widow
or husband and children of such employe," etc.

The real cause of action against the company was
stated in the original petition. This cause of action sur-
vived, under the above section, to the decedent's repre-
sentative for the benefit of his widow and minor
child. The original petition alleged that plain-
tiff had a dependent wife and minor child. The petition
for revivor reaffirmed each and every allegation con-
tained in the petition. It is clearly established by the
evidence that the decedent was survived by a
widow and minor child, who were entitled to whatever
recovery might be had. Since the circumstances show
a clear right of revivor and that the revivor was prop-
erly ordered, we are not inclined to reverse the judg-
ment on the mere ground that the petition for revivor
failed to allege in terms that the decedent was survived
by a widow and minor child and to ask a re-
vivor for their benefit, or that the order of revivor
itself did not provide that the action was revived for
their benefit.

In this same connection it is insisted that the in-
struction on the measure of damages is erroneous, be-
cause it did not authorize the jury to apportion the
damages between the widow and child, and a reversal
is asked for this reason and for the further reason that

no apportionment of the damages was actually made. In support of this position the company relies on the statement in Gulf, C. & S. F. Ry. Co. v. McGinnis, 228 U. S. 176, 57 L. Ed. 785, that "though the judgment may be for a gross amount, the interest of each beneficiary must be measured by his or her individual pecuniary loss. That apportionment is for the jury to return. This will, of course, exclude any recovery in behalf of such as show no pecuniary loss."

In the more recent case of Central Vermont Ry Co. v. White, 238 U. S. 507, 59 L. Ed. 1433, the U. S. Supreme Court, after adverting to the fact that the quoted language was part of the court's holding that it was error to refuse to charge that the married daughter was not a dependent of her deceased father, and that the language should be read in the light of the record then before the court, distinctly pointed out that there was nothing in that record which would support a ruling that a general verdict was invalid, or that the verdict could be set aside because it failed to fix the amount each beneficiary was to receive. In further discussing the question the court said:

"Under Lord Campbell's act (9 & 10 Vict., chap. 93, sec. 2), and in a few of the American states the jury is required to apportion the damages in this class of cases. But even in those states the distribution is held to be of no concern to the defendant, and the failure to apportion the damages is held not to be reversible error (Norfolk & W. R. Co. v. Stevens, 97 Va. 631 (1) 634, 46 L. R. A. 367, 34 S. E. 525; International & G. N. R. Co. v. Lehman, — Tex. Civ. App. ——, 72 S. W. 619), certainly not unless the defendant can show that it has been injured by such failure. The Employers' Liability Act is substantially like Lord Campbell's act, except that it omits the requirement that the jury should apportion the damages. That omission clearly indicates an intention on the part of Congress to change what was the English practice so as to make the Federal statute conform to what was the rule in most of the states in which it was to operate. Those statutes, when silent on the subject, have generally been construed not to require juries to make an apportionment. Indeed, to make them do so, would, in many cases, double the issues; for, in connection with the determination of negligence and damage, it would be necessary also to enter

upon an investigation of the domestic affairs of the deceased—a matter for probate courts, and not for jurors. If, as in the McGinnis case, the plaintiff sues for the benefit of one who is not entitled to share in the recovery (Taylor v. Taylor, 232 U. S. 363, 58 L. Ed. 638, 34 Sup. Ct. Rep. 350, 6 N. C. C. A. 436; North Carolina R. Co. v. Zachary, 232 U. S. 248, 58 L. Ed. 591, 34 Sup. Ct. Rep. 305, Ann. Cas. 1914C, 159), and if her inclusion in the suit might increase the amount of the recovery, the defendant may raise the question in such mode as may be appropriate under the practice of the court in which the trial is had, so as to secure a ruling which will prevent a recovery for one not entitled to share in the benefits of the Federal act. But no such question was or could have been raised in the present case, since, as matter of law, the wife and minor children were all to be treated as entitled to share in the amount recovered for the death of the husband and father. 35 St. at L. 65, chap. 149, Compt. Stat. 1913, sec. 8657.''

In the case under consideration there is all the greater reason for applying the rule that a general verdict for the plaintiff may be returned by the jury without apportioning the damages between the beneficiaries. This is not a suit under the original act to recover damages for the pecuniary benefits which the wife and minor child were deprived of by the death of the decedent, but a suit under section 9 of the act to recover damages for the mental and physical suffering and loss of time of the decedent. Since in such a case the widow and child are merely substituted for the decedent and recover only such damages as the decedent could have recovered had he survived, it is clear, we think, that there is no reasonable basis for an apportionment of the damages between the beneficiaries, and that no such apportionment is contemplated. It, therefore, follows that a general verdict may be rendered without apportioning the damages between the beneficiaries.

But it is insisted that the trial court either should have held that the decedent, as a matter of law, assumed the risk of injury, or should have submitted the question of assumed risk to the jury. This position is predicated on the statements of certain employes that they, while decedent was present, had frequently seen coal fall from the tenders of passing engines. A railroad is charged with the duty of exercising ordinary care to

equip and load its trains so as to avoid injury to track-men like the decedent whose presence along and near the track it has reason to anticipate, and where it fails to exercise such care, and by reason thereof one charged with the duty of maintaining the track is injured, it is liable. C., N. O. & T. P. Ry. Co. et al. v. Strunks' Admx., 167 Ky. 340; L. & N. R. R. Co. v. Davis, 115 Ky. 270; L. & N. R. R. Co. v. Simrall's Admr., 127 Ky. 55; Railroad Company v. Wood (Texas), 63 S. W. 164; L. & N. R. R. Co. v. Clark, 106 S. W. 1184. In the last mentioned case, a brakeman was struck by a lump of coal that fell from the tender of an engine. It was held that it was the duty of the company to see that the coal was properly loaded and that the brakeman, who had nothing to do with the loading of the coal, had the right to assume that it was properly loaded. In the case under consideration, the evidence clearly shows that the coal was piled high above the sides of the tender, and, by reason of the fact, was likely to fall or to be thrown from the tender and injure those working along the track. There can be no doubt that a clear case of negligence is made out by the evidence. The servant does not assume risks growing out of the master's negligence, unless the conditions and danger therefrom are known and appreciated by him, or are so obvious that an ordinarily prudent person, under the circumstances, would have observed and appreciated them. Gila Valley, Globe & Northern Railway Company v. Hall, 232 U. S. 93, 58 L. Ed. 521; Seaboard Air Line Railway v. Horton, 233 U. S. 492, 58 L. Ed. 1062; Consolidation Coal Company v. Moore, 166 Ky. 48; Stearns Coal & Lumber Company v. Calhoun, 166 Ky. 607; Wasioto & Black Mountain Railroad Company v. Hall, 167 Ky. 819. It is to the particular conditions and dangers resulting in the accident that the rule applies. The mere fact that the company, on former occasions, had been guilty of similar acts of negligence is not sufficient to charge the employe with knowledge of the particular conditions and of the danger therefrom. Notwithstanding other acts of negligence, the employe has the right to assume that the company has done its duty and to act on this assumption. Since the decedent did not know that the particular tender was improperly loaded and had no opportunity to observe and appreciate the danger therefrom, we conclude that no question of assumed risk was

presented and that the trial court did not err in so holding.

Another ground urged for reversal is that the damages are excessive, and, in this connection, it is insisted that the court erred in not instructing the jury to find for defendant unless they believed from the evidence that the blow received by the decedent was the direct and proximate cause of his insanity. For the defendant three physicians testified that decedent's insanity was due to paresis, and that his paresis resulted either from alcoholism or syphilis, and was not caused by the blow which decedent received. The evidence for plaintiff tends to show that decedent was in good health prior to the injury and there appeared to be nothing wrong with his mind. He worked regularly up to the day of the accident, but after that time worked intermittently, spoke of a swimming in his head and acted as if something was wrong with his mind. He also complained of his suffering. It was also shown that paresis might be accelerated by a blow such as the decedent received. Under the circumstances, it cannot be said, as a matter of law, that all of decedent's suffering was due to his insanity, and that plaintiff was not entitled to recover unless the insanity was caused by the blow. It follows that the offered instruction was properly refused. For a like reason, we cannot say that the finding of the jury is excessive.

The further point is made that the verdict, which, pursuant to section 2268, Kentucky Statutes, and section 248 of the constitution, was returned by only nine of the jurymen, was invalid because contrary to the seventh amendment to the constitution of the United States. This contention has been made in several cases and we have uniformly held that, in actions brought in our courts under the Federal Employers' Liability Act, three-fourths or more of the jurors concurring may return a verdict. C. & O. Ry. Co. v. Kelly's Adm'x., 161 Ky. 655, 171 S. W. 185; L. & N. R. R. Co. v. Johnson's Adm'x., 161 Ky. 824, 171 S. W. 847; L. & N. R. R. Co. v. Winkler, 162 Ky. 843, 173 S. W. 151; L. & N. R. R. Co. v. Stewart's Adm'x., 163 Ky. 823, 173 S. W. 157.

We have been unable to find any error in the admission or rejection of evidence of such a prejudicial character as to justify a reversal of the judgment.

Judgment affirmed.