# CHARLESTON.

JAMES W. MENAFEE *v.* MONONGAHELA RAILWAY COMPANY

(No. 6231)

Submitted April 9, 1929.    Decided April 23, 1929.
(Rehearing denied May 27, 1929).

*Minter L. Wilson* and *William E. Glasscock,* for defendant in error.

*Arthur Van Meter* and *Frank Cox,* for plaintiff in error.

MAXWELL, JUDGE:

On the night of February 26, 1926, about eight-thirty o'clock, the plaintiff, James W. Menafee, who was employed as night watchman at tipple number one of the Gilbert-Davis Coal Company located on Scotts Run a few miles from Morgantown, was struck by a lump of coal which fell from a moving train as he was about to ascend the steps of the tipple. The impact from the coal caused him to fall backwards across a sidetrack, inflicting the injuries herein complained of and the basis of this suit. The defendant prosecutes this writ of error to a judgment of the trial court on a verdict for $12,833.00 in favor of the plaintiff.

It appears from the evidence of the plaintiff who was the only one present at the scene of this unfortunate occurrence, that, pursuant to his duties as night watchman, he was making his rounds in the vicinity of the tipple before actually going up into it; that he noticed defendant's train coming down, that is, in the direction of Morgantown; that the train stopped; that he went on about his work back under the tipple away from the train and upon coming out again noticed the

train was moving but paid little attention to it; that as he was about to ascend the stairs into the tipple, and had one hand on the stair railing and was approximately two feet away from the stairs, and about nine feet away from the train, it jammed, causing him to look up; that he saw a large lump of coal along with smaller lumps falling from the car and coming in his direction; that he attempted to jump up the steps, in fact, had his right foot elevated to within two inches of the first step, when the large lump struck the inside of his right leg between the knee and ankle, knocked him backwards across a sidetrack which extends directly under the tipple, and injured him severely.

A few minutes later, Vincent Fox, a fellow workman, found the plaintiff lying on his back across the rail with the large lump of coal between his legs. He picked up plaintiff, carried him to a passing bus, and sent him home. Fox said the lump of coal was about one and one-half feet long, and about ten or twelve inches each other way and weighed fifty to seventy-five pounds.

Plaintiff further testifies that he could see plainly because of a one hundred watt lamp right over his head and several other lights around there; that the coal was loaded high on the car from which the lump fell—ten per cent overloaded was his estimate; that by "jamming" he meant the taking up of the slack between the cars caused by the driving brakes being applied; that the train did not come to a stop but merely slowed down; that he had been a locomotive engineer for seventeen years, and that such a method of taking up the slack is improper; that the proper way to take up slack is first to bunch the train and then use the automatic, which controls the brakes on both engine and train; that the coal was already loose and the jar of the train was sufficient to roll it off; that the train was going fifteen or twenty miles an hour and was composed of between sixty and seventy cars.

The train was a "double-header". The defendant introduced the evidence of the engineers of both engines, and of the train conductor. Everett J. Cross, engineer on the second engine—the one nearest the cars—could not remember whether the train had been stopped that night at or near the

tipple, nor how the train was operated on the day of the accident. William Jack, engineer on the front engine, remembered stopping at the tipple, but testified that the brakes were not applied thereafter in that vicinity, and that ''we were careful in handling the train.'' Charles Green, the conductor, testified that the train stopped for orders at a telephone booth near the tipple, but no brakes were applied after starting again, and that the train did not make a speed of as much as twenty miles an hour. Upon being asked whether shutting the steam off the engines without putting on the brakes would cause a jam, he replied that it would cause a slight vacuum in the cylinders that would cause a little ''running in''. None of these knew of the accident until several days afterward.

A great part of the testimony on both sides is concerned with the exact location of plaintiff at the time of impact, and the ownership of the property in the immediate vicinity. A carefully prepared map, duly authenticated, was introduced by defendant, showing the relative positions of the tipple, the defendant's right of way, the steps and the main line and sidetracks of the railway. The facts shown by this and other evidence are: that defendant leased its right of way of the Scotts Run Railway Company; that the Gilbert-Davis Tipple No. 1 extended onto the defendant's right of way; that this tipple has been there for a number of years; that there was no lease nor sale to the Gilbert-Davis Coal Company of any part of the right of way around this tipple; that the steps upon which the plaintiff was about to ascend were on defendant's right of way, about fourteen and one-half inches from the boundary line, and that if plaintiff had one foot on the ground twenty-four inches away from the step and to the right thereof, and had one foot elevated within two inches of. the bottom step when he was struck, then he was partly on defendant's right of way and partly on his employer's property.

The record is replete with testimony of the various doctors and specialists who have examined plaintiff. Much of it is in conflict, especially as regards the permanency of his injuries. All this was properly before the jury.

Defendant assigns numerous errors for reversal of the trial court. Outstanding among them is the giving of plaintiff's instructions Nos. 4, 7 and 8, which, defendant contends, do not mention the question of contributory negligence of plaintiff, and that this is particularly erroneous in the light of the fact that such alleged contributory negligence was an issue of the case recognized and admitted by plaintiff in his first, second and third instructions, and as disclosed by the evidence. We are therefore faced with the question: Were the acts of the plaintiff sufficiently indicative of contributory negligence to require the submission of that question to the jury? We will confine ourselves to the acts of plaintiff prior to seeing the lump of coal actually coming toward him, for it is settled law that when a plaintiff is confronted with imminent peril caused by another's negligence and is compelled to choose instantly an avenue of escape, he cannot ordinarily be held to be contributorily negligent, if he chooses the wrong one. *Hanby* v. *Railroad*, 38 W. Va. 570; *Normile and husband* v. *Wheeling Traction Co.*, 57 W. Va. 132, 145.

Let us examine the evidence as to plaintiff's actions prior to the moment of peril. At the outset we find that plaintiff had had long experience as a locomotive engineer and was familiar with the operation of trains. Under cross-examination he admitted that it was customary to load coal cars so that the coal is piled above the top of the side of the car, but that it is not cusomary to do so in a "negligent way". He further admitted that in his experience coal had frequently fallen off cars, but that such was usually due to bad equipment and inability of the engineer to handle his train properly. In reference to the distance from the car that coal would fall, he testified: "Q. Did it strike the ground immediately at the bottom of the car? A. What do you mean— away from it some distance? Q. I mean the latter part of the car where it goes on the trucks. Did it fall straight down, or roll out away from the car? A. I couldn't explain that hardly, because a lump of coal falling from a moving train would probably go some distance away from the car, probably two feet or two feet and a half from the edge of the car when it struck on the ground." From such testimony it would

250

appear that plaintiff considered himself in a safe place when he approached to within nine feet of the moving train. The evidence showed he paid practically no attention to the train, immediately prior to his injury. He was engaged in his work and about to ascend the steps which for sometime the defendant, seemingly without protest, had permitted to remain on its right of way. Evidently the defendant did not consider the steps to be in a dangerous locality else it would have required their removal long ago. The probability of danger in their use was therefore not likely to occur to plaintiff. That any harm would thus come to him was a remote possibility. That he would be overtaken by the particular harm which befell him, due in great part to the evident careless loading of a large lump of coal on the top of a probably overloaded car, was scarcely forseeable.

As regards the application of the brakes and the slowing up of the train which defendant contends plaintiff should have noticed, the following testimony was adduced: "Q. That falling off was produced by the jar? A. That could be produced in different ways. Q. What was it produced by? A. Heavy braking power from the end of the train. A. You knew immediately when they put on those brakes, being a railroad engineer? A. How could I tell? Q. Couldn't you hear it? A. Not when the engine was probably fifty cars from me. Q. Just as soon as it reached your section, or the section in front of you, you could tell? A. Couldn't tell anything about the brakes. Q. No, you could tell by the noise the brakes were being used? A. Yes, I could tell they were being used to take the slack of the train in, that was what caused the jam of the train. Q. You knew that long before the lump of coal came your way, didn't you? A. No, sir. Q. How long before? A. The jam of the train caused me to look up, and then I saw the coal coming." Thus, the actual jam of the train was the danger signal, and then it was too late.

We conclude from the whole record that there was no occasion to submit to the jury the question of contributory negligence, because there was no appreciable basis on which to predicate such charge. The record does not disclose any act

of omission or commission on the plaintiff's part which contributed to his injury. In such situation the defense of contributory negligence is a question of law for the court and not of fact for the jury. *Snoddey* v. *Huntington*, 37 W. Va. 111; *Slaughter* v. *Huntington*, 64 W. Va. 237; *Hysell* v. *Central City*, 68 W. Va. 769; Thompson Negligence, Vol. I, par. 428. Such being the law, the fact that contributory negligence was mentioned in instructions Nos. 1, 2 and 3 given for plaintiff and omitted in others has no weight. If contributory negligence was not an issue the negativing thereof in some of the plaintiff's instructions did not make it an issue; it was mere surplusage. It follows that the failure to negative that defense in instructions Nos. 4, 7 and 8 was not improper. For the same reason defendant's instructions Nos. 7, 8, 9, 10, 11, 15, 16, 17, 19, 20, 21 and 22 were properly refused.

· We feel that the question of alleged contributory negligence is the major question before us, nevertheless we shall consider the various other errors relied on by defendant, none of which in our opinion is substantial.

Defendant says the declaration was indefinite and evasive as to locality, and failed to allege the primary act of omission or commission which constitutes negligence. Apropos of the first point, it is to be noted that the testimony shows that plaintiff at the time of impact was actually on the properties of both the defendant and the Gilbert-Davis Coal Company. The impossibility of alleging that he was on either property thus becomes apparent. As to the second point, the declaration alleges that defendant so carelessly, negligently, and improperly behaved and conducted itself in and about accepting from shippers of coal over said railroad, and in and about hauling railroad freight cars which were then and there improperly, carelessly, negligently, and improperly behaved and conducted itself in and about the management of its said locomotive engines, that by and through its default, carelessness, negligence, and improper conduct, there was dislodged and thrown from one of the railroad cars which had been theretofore improperly, negligently, and carelessly loaded and trimmed, a large and heavy lump of coal, whereby and through which negligence plaintiff was injured. By this allegation

it appears that the acts of negligence are sufficiently alleged to permit of adequate defense. All incidental facts and circumstances need not be averred. *Snyder* v. *Wheeling, etc., Co.*, 43 W. Va. 661.

Plaintiff's instructions Nos. 2, 3 and 4 are challenged. By instruction No. 2 the court told the jury that the law imposed upon the defendant the duty to accept for hauling over its railroad only such cars of coal as were properly and carefully loaded, and such as had been made ready for safe and careful handling by said company, and that if the defendant accepted cars of coal which were not in such condition and that by reason of the improper and careless loading of such cars the plaintiff's injury was caused to him, as charged in the declaration, without fault on his part, the plaintiff was entitled to recover damages. Instruction No. 3 told the jury that it was the duty of defendant to so run and operate its trains upon its tracks that persons who were lawfully on or near the tracks of the defendant or who were lawfully on property adjoining said tracks would not be injured, and if they believed from the evidence that the defendant so improperly and negligently ran and operated its train that plaintiff was injured thereby, as alleged in the declaration, while he was lawfully on property adjoining the tracks of defendant company, engaged in his proper and lawful duties, and without fault on his part, the plaintiff was entitled to recover damages from the defendant.

Defendant's criticism of these instructions is in major part that they respectively impose upon defendant an absolute liability for accepting improperly loaded cars, and for operation of its trains in such negligent manner as to injure other persons. It is suggested that number two would more properly have told the jury that it was the defendant's duty to use due care to discover defects in loading rather than to have told the jury that it was the duty of the defendant to accept only properly loaded cars. While the phraseology suggested would probably have been better, it does not appear that the language employed was such as to prejudice the right of the defendant, in the light of the fact that if the coal was improperly loaded, it was readily observable to the defendant's

employees. It cannot be gainsaid that railroad companies ordinarily are liable for accidents, caused by improperly loaded cars, to persons who are not trespassers or mere licensees, especially where such improper loading is patent. It follows that it is the duty of such transportation company not to accept for haulage cars which it can be seen are not properly loaded. This accident would likely not have happened if there had not been improper loading. Under the facts and circumstances we cannot see that defendant has been prejudiced in this particular, though the language of the instruction is perhaps broader than it ought to have been.

As to the third instruction, it is said that it places on the defendant an absolute duty so to operate its trains as not to injure persons on or near the track. This instruction, too, must, of course, be considered in the light of the evidence. Thus considering it, the alleged error is not apparent. There can be no serious question of the proposition that a railroad company is liable for injury inflicted by it upon one lawfully in the vicinity of its tracks by its careless and negligent operation of its trains. Such is the effect of this instruction. If this train was "jammed" in a careless and inefficient manner, there was negligence.

Instruction No. 4 reads:

"The Court instructs the jury that, if you believe from the evidence that the injury complained of was the result of the negligence of the defendant, you shall find for the plaintiff, even tho you may further believe that the plaintiff, at the time of injury, was on land belonging to defendant, if you further believe that the plaintiff was on land under the control and management of the employer of the plaintiff, and that plaintiff was at the time and place of injury, performing the proper duties of his employment."

Defendant says this instruction is erroneous "because it instructs in effect that the rule as to trespasser or licensee does not apply to plaintiff because he was agent or employee of another." We do not so conceive it. Plaintiff testifies that at the time of the injury he was on land under control of his employer. This instruction appears to be based upon

that testimony. The evidence shows that the steps leading to the tipple has been on defendant's right of way for sometime, apparently without protest from defendant. In this situation the plaintiff cannot properly be classified as a trespasser or as a mere licensee. He was engaged in the discharge of the duties which he owed his employer on property, a part of which was leased by the defendant, but occupied by the employer with the apparent consent of the defendant. There was no trespassing; nor was the plaintiff a mere licensee. This meets the defendant's objections to the trial court's refusal to give defendant's instructions Nos. 25 to 30, inclusive, which presented the law applicable to trespassers or licensees. *Flowers* v. *Railroad,* 135 Va. 367.

Defendant assigns as error the admission of Dr. C. C. Yount's testimony for plaintiff, which, it is claimed, was based at least in part on an X-ray picture made by a person unknown to the record with no evidence of the picture's correctness. The testimony discloses that this X-ray picture was practically identical with the picture Dr. Yount himself took, although his picture was not introduced in evidence; and further, Dr. Yount testified on cross-examination that the physical condition of plaintiff was determined by him before he took any X-ray picture, or saw the one in evidence. Thus the error in permitting the witness to make reference to the unidentified X-ray picture was harmless.

The assignments of error predicated on the testimony of the plaintiff's daughter to the effect that plaintiff suffered pain and was not able to accomplish much work; and on the admission in evidence of the American Experience Table of Mortality to show the expectancy of life of a person of the age of the plaintiff, are not well taken. Authorities need not be cited for these familiar propositions.

As to the alleged excessiveness of the verdict, there is nothing in the record indicating any reason why the court should disturb the verdict because of its amount. *Looney* v. *Ry. Co.,* 102 W. Va. 40, 55.

Perceiving no grounds of prejudicial error, we affirm the judgment.

*Affirmed.*