MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE v. WILEY.

4-5859 140 S. W. 2d 676

Opinion delivered May 6, 1940.

*Thomas B. Pryor, David R. Boatright* and *W. L. Curtis,* for appellant.

*Partain & Agee,* for appellee.

BAKER, J. The complaint alleged that on or about the 13th of October, 1937, plaintiff was employed as a night watchman upon a bridge that had been damaged by a wreck occurring at that point a few days before; that the track and bridge at the place where he was employed was used in interstate commerce over which the defendant operated freight and passenger trains in interstate commerce; that the matter of liability was governed by the Federal Employer's Liability Act and Acts of Congress of the United States in reference thereto and that the plaintiff, while in the exercise of due care for his own safety and in the exercise of the duties of his employment and at a place where he was required to be was injured by a freight train of defendant which approached and passed along and over the track at said point; that by reason of the negligence of the employees of the defendant a large and heavy piece of coal, or slate, or debris fell from a car on said train, striking the plaintiff. One of the particular acts of

negligence as alleged in the complaint was that a large and heavy piece of coal, slate or debris was negligently placed, stacked or loaded so as to be loose or insecure, dangerous and unsafe. These facts are alleged in a more elaborate manner than we undertake to employ in stating them as we feel that it is unnecessary to set forth in minute detail the more extensive phraseology employed by the pleader. We think now that the issues may be stated much more concisely than they appear in the voluminous briefs submitted. Counsel for both the appellant and appellee have proceeded upon the theory that the case was one arising under the Federal Employer's Liability Act (45 U.S.C.A., § 51 *et seq.*) and that there can be no recovery unless there was proof of a substantial nature establishing negligence on the part of the defendant, the appellant here, and it is not contended on the part of the appellee that he is entitled to any presumption of negligence arising out of the fact that he was injured by the running or operation of the train. Some of the undisputed matters in relation to this accident are to the effect that plaintiff was employed as watchman to remain at or near the end of the bridge, and that after the train had passed over the bridge it was his duty to go upon it and inspect the same for the purposes of determining if any of the supports placed there after there had been a wreck had become loosened or had given away by reason of the heavy weight or strain or vibration in the operation of the train over the bridge, and it was his duty to replace and drive in wedges used for the purpose of furnishing additional supports and strengthening the bridge after it had been damaged in a recent wreck occurring at that point. It was admitted that on account of this damaged and weakened condition of the bridge all trains had "slow orders," that is to say, that they were to approach and cross over the bridge at a speed, some witnesses said, not in excess of five miles an hour, others at a rate not in excess of ten miles an hour. The particular rate, however, is not very material at this time. Neal Wiley, appellee, contends that at the time he was employed and stationed upon the bridge he was given instructions and directions to watch

the speed of approaching trains and ordered to give signals if they were approaching at a speed too high for safety. His testimony was in sharp dispute, it being contended on the part of appellant, that his only duty was to keep watch at the bridge and to observe the condition after trains had passed over it and to correct any weakness observed by driving in the wedges necessary to restore the bridge to its former strength, in case wedges or supports might have been loosened by reason of weight or vibration caused by trains passing over the same. He says that he was standing seven or eight feet away from the track as the train passed at the time he was injured; that he had placed himself in that position in an effort to signal the engineer in order to cause him to moderate his speed in approaching the end of the bridge. During the time that the appellee was so employed he was engaged in the performance of his duties in the nighttime; the weather was somewhat cold and he had kept a fire back some distance from the end of the bridge and away from the railroad track and near this fire there was a tarpaulin which he had used to protect himself as a shelter from the bad weather. He was the only person so engaged at the particular time and place when the injury occurred, and, under the evidence appearing in this record, he was the only witness who knew any of the particular facts and circumstances causing him to be hurt. His right of recovery must be determined almost solely from the events and facts he has been able to detail in relation thereto. The appellee's statement as to the manner in which he was injured is to the effect that as he stood near the railroad track, seven or eight feet away, with lantern in hand, at the time of the approach of the freight train, he was giving signals to cause the engineer to reduce the speed of the train and as the engine passed him a piece of coal or slate, or other heavy object rolled off or fell from the top of the tender, or was thrown therefrom and that it struck him on the head; that he saw the object as it was thrown or jolted, or fell from the tender where the coal is loaded so as to be accessible to the engine, that although he saw it start he was un-

able to avoid being struck by it. The effect of his testimony was that the engineer in attempting to slow down by application of brakes caused this coal to roll off or fall at that particular time and place.

The foregoing matters are the principal facts that have been argued in relation to the manner in which the injury was caused or occasioned. There has been little evidence and not a great deal of argument upon the proposition of the improper loading of this coal so that some part of it may have been so placed as to be upon or near the edge of this tender, but appellant has argued forcefully and vigorously that appellee's testimony in regard to the fact that the coal was cast or thrown from the top of the tender on account of the negligence of the engineer in the operation of the train at the particular point violates well known laws of physics and that his statements in that respect must be regarded as so illogical as to be beyond belief.

We do not consider, however, that the burden is upon plaintiff to explain with minute detail the particular motion, or jolt of the train, if there was any, that may have caused a piece of coal to fall from the tender, from the top or near the outer edge thereof, the place or point from which the plaintiff says this particular missile came that struck him on the head. If there was negligence in loading the coal or any part of it was so placed that it might have fallen off or that it would later fall off and cause the particular injury complained of, we cannot say now, as a matter of law, that a duty devolved upon the appellee at the time of the trial to make an explanation of all the facts that may have been involved causing the particular accident.

All of us know from observation that locomotives fueled by coal are ordinarily loaded at the coaling stations to capacity and that along the right-of-way, particularly near these coaling stations, lumps of coal sometimes roll off, and may be found near the tracks of all such railroad companies. Nor is it extremely unusual to find or see lumps of coal upon the right-of-way of

the railroads perhaps considerable distances from the coaling stations.

Indeed, it appears that coal that has fallen from the top of the tenders is not regarded as the result of a particularly wasteful practice, but probably by the unfortunate poor who live nearby it seems to be considered an involuntary contribution.

It is argued by the appellant company that as the coal is used after leaving the stations although it may have been heaped upon top of the tender it becomes increasingly less likely to fall for the reason that the top of the coal is soon confined within the sides of the tender. The force of this argument is not conclusive. It is answered by the testimony of the appellee who says that he saw the object that struck him on the head roll or fall from the edge of the tender.

It is also argued by the appellant that the only object they were able to find at or near the place where appellee says he was injured was a colored stone or rock, described by several witnesses. Their statements vary both as to the size of the rock and as to its color, but notwithstanding such differences in the testimony. we are inclined to regard these descriptive terms as being more in the nature of inaccurate observations than as intended for deceptive purposes. The stone or rock, about which most of the witnesses have given testimony was one which they have described as a "native stone," meaning, of course, that it was one common to the locality and not one that had probably been brought in as part of the load of coal.

Even if the stone found be one indigenous to the community; or even the failure to find a piece of coal or slate or some other object that might have been brought in with this load of coal upon the tender does not make a situation impossible of belief when other facts are considered which are pertinent to the controversy. The appellee was injured sometime in the night. His injury was a serious one accompanied by the body afflictions sometimes attendant upon such accidents, but in addition it had affected him somewhat mentally, im-

pairing to some extent his memory. At least, such was the testimony not only of the appellee, but of a physician who testified in respect to the nature and extent of the injury and its probable effects. It is argued that because of certain apparent contradictions in Wiley's testimony certain statements made by him and contradicted by others, and on account of his interest in the litigation, his evidence is of a nature so unsubstantial that the verdict and consequent judgment rendered thereon should not be upheld. With this contention we do not agree. The evidence raised questions of fact to be determined by the jury, nor are we authorized by any authority to which our attention has been called, to say as a matter of law that the appellee should not have a right to recover because he is unable to explain in a satisfactory manner many propositions of fact, or seeming contradictions.

Prior to this time due consideration has been given to facts very similar to those appearing on this appeal. Issues arising out of careless or improper loading of coal on the tender so that a lump fell therefrom causing injuries have arisen and been decided by our own court. The very question more favorably stated for the railroad company than in the instant case appears in *St. L. I. M. & S. R. Co.* v. *Armbrust,* 121 Ark. 351, 181 S. W. 131, Ann. Cas. 1917D, 537. The negligence established in the cited case is not different in kind or degree from that proven by appellee. *St. L.-S. F. R. Co.* v. *Carr,* 94 Ark. 246, 126 S. W. 850.

Furthermore, if we give to appellee's evidence that consideration favorable to sustain the verdict and judgment we must reach the conclusion there was other and additional negligence in the operation of the train. He may rightly invoke this rule. On appeal evidence is viewed with all the inferences reasonably deducible therefrom in the light most favorable to the appellee. *Magnolia Petroleum Co.* v. *Bell,* 186 Ark. 723, 55 S. W. 2d 782. Verdicts upon conflicting evidence are conclusive on appeal. *Blakely & Son* v. *Jones,* 186 Ark. 1169, 57 S. W. 2d 1032; *Ætna Life Ins. Co.* v. *Dewberry,* 187 Ark. 278, 59 S. W. 2d 607; *Atlas Life Ins. Co.* v. *Wells,* 187 Ark. 979, 63 S. W. 2d 533.

He said he was given a white lantern and a red one and told by Mr. McLendon, the superintendent, when employed, to signal with the red lantern any train approaching the defective bridge at a speed too high for safety, that is exceeding five or ten miles per hour. The white lantern was for signals when the train was operating under proper speed. Appellee also testified he observed the train approaching at a speed greater than was fixed by the rule or instructions received by him and that he signaled with the red lantern. We quote from appellee's brief: "He (the engineer) applied the air-brakes and the train gave a jerk and I looked up and this piece of coal fell off the tender and I dodged . . . As he applied the air the cars shoved against the engine. . . . coal was stacked up all around like that above the side."

So, we think, the jury was warranted in finding there was negligence in the operation of the train with the tender loaded as described. There was in addition some proof that the rock found at or very near the place of the accident was slate-like or the kind sometimes found in coal. Such evidence was substantial—positive—not at all impossible or even improbable, though for the most part contradicted. It was, under such circumstances, the function of the jury to settle or determine which theory was true, and having decided these matters for appellee we may not as a proposition of law declare there was error in so deciding.

It seems hardly necessary to do so, but we now cite some authorities from other jurisdictions in the determination of similar facts to those we are considering. *Menafee* v. *Monongahela Ry. Co.,* 107 W. Va. 245, 148 S. E. 109; *Cincinnati, N. O. & T. P. Ry. Co.* v. *Claybourne's Admr.,* 169 Ky. 315, 183 S. W. 903; *L. & N. R. R. Co.* v. *Clark,* 106 S. W. 1184 (Ky.); *Yazoo & M. V. R. Co.* v. *McCaskell,* 118 Miss. 629, 79 So. 817.

All these present facts which are not dissimilar from those in the instant case and some of them arose and were tried under the Federal Employers' Liability Act. In them will be found ample authority to declare negligence on account of improper loading of a car or tender, or from improper handling or operation of trains.

Having decided that evidence of a substantial nature supports the verdict we decline to enter upon a discussion of facts to decide where the preponderance lies. There is an intimation, if not an insistence that in this class of cases we should do so. Although the Federal Employers' Liability Act creates or declares certain rights permitting recoveries under conditions stated and provides that trials may be had in both state and federal courts, matters of procedure were untouched.

The only other matter we are impelled to mention is the charge that the verdict is unreasonable. The recovery was for $30,000.

Appellee was about 22 years old when injured, was earning about $100 per month. The evidence discloses he was selected or accepted by the superintendent because he was capable, dependable, trustworthy. Surely he might have made reasonable progress had the unfortunate accident not wholly incapacitated him.

Had he retained his physical fitness his earnings even at the rate when injured would have very greatly exceeded the amount of the recovery. He stated that he was then earning $104 per month. The present value of such earnings would have equaled or exceeded the recovery, and have justified the amount. Any substantial recovery for proven physical pain and mental anguish might have greatly augmented the amount. No error appears.

Affirmed.

GRIFFIN SMITH, C. J., dissenting. My dissent is based upon what I believe to be a misconception by the majority of the effect of the evidence when contradictory statements of the plaintiff are considered and when improbabilities amounting to fantastic absurdities are weighed against the background.

That plaintiff was injured to some extent there can be no doubt. That he was employed by defendant when the accident occurred is admitted. That he was found in an unconscious condition near a fire on the right-of-way by the crew of a north-bound freight train

is testified to by operatives who swore that the train was not flagged.

*How* the injury occurred is told only by the plaintiff who first acknowledged that he did not know. He subsequently gave a thirty-thousand-dollar account of having looked up into the blackness of night in time to see a piece of coal or slate fall from the tender of a freight train he claims to have flagged. A preponderance of the evidence is to the effect that no such train was being operated.

In actions at law in this court *substantial* evidence of an essential fact is required. Trial courts are concerned with a preponderance. But *substantial* evidence should not lose its significance and become confused with shadows of substance—shadows which in the instant case do not rise to the dignity of scintilla.

It is obvious that plaintiff's identification of the falling object was an incident of trial necessity and that the revised version was an inspiration seized upon after there was realization that the first explanation was insufficient under the Federal Employer's Liability Act. Resourcefulness seems to have supplied the element of liability in a chain of contention which to me appears too weak to stand judicial test.

Mr. Justice HOLT concurs in this opinion.