**Gail M. CONNORS, Plaintiff-Appellant,**

v.

**Mary N. GALLICK, Executrix of the Estate of James J. Gallick, Deceased, and Mary N. Gallick, Defendants-Appellees.**

No. 15578.

United States Court of Appeals
Sixth Circuit.

Dec. 19, 1964.

Burgess, Fullmer, Parker & Steck, Cleveland, Ohio, on brief, for appellant.

Marshall I. Nurenberg, Cleveland, Ohio, Dudnik, Komito, Nurenberg, Plevin, Dempsey & Jacobson, Cleveland, Ohio, Meyer A. Cook, Cleveland, Ohio, on brief, for appellees.

Before MILLER, O'SULLIVAN and PHILLIPS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Disposition of this appeal may be the final chapter to the interesting litigation in which James J. Gallick, now deceased, obtained a $625,000.00 verdict in the Court of Common Pleas of Cuyahoga County, Ohio, against the Baltimore & Ohio Railroad Company in a Federal Employers' Liability Act case. The cause came to be known as the "bug-bite" case because liability was predicated upon the claim that Gallick was, on August 10, 1954, bitten by an unidentified insect while working along the railroad's right of way. Gallick died while a motion for new trial was pending in the Ohio Court of Appeals, shortly after the United States Supreme Court ruled that the Court of Appeals had erred in reversing the judgment entered upon that verdict. Following Gallick's death Mrs. Connors, the plaintiff in the present case, notified his former counsel of her claim to be his long-abandoned daughter by a previous marriage. Gallick's counsel, now representing Mrs. Gallick, then settled Gallick's judgment against the railroad for $475,000 in consideration of an agreed denial of the motion for new trial. The present action seeks a declaration of plaintiff's rights to participate in the settlement fund. Stripped of factual and procedural complexities, the question involved in this appeal is whether Gallick's death while the motion for a new trial was pending brought into existence a survival cause of action in which plaintiff became such a beneficiary as to be entitled to participate in the settlement fund.

In order to delimit the precise scope of our holding, it is necessary to state in some detail the procedural background

C. Richard Andrews, Cleveland, Ohio, Randall F. Fullmer, Otto Miller, III,

against which the agreed settlement was made. Judgment on the jury verdict was entered in the Ohio Common Pleas Court in June, 1959. Upon appeal by the railroad, the Court of Appeals for Cuyahoga County reversed the Common Pleas Court and entered judgment for the railroad upon its view that Gallick's proofs were insufficient to support the judgment under the FELA. Gallick v. Baltimore & O. R. R. Co., Ohio App., 173 N.E.2d 382 (1961). The Court of Appeals held that the trial court erred in denying the railroad's motions for directed verdict and for judgment notwithstanding the verdict, but ruled that none of the other assigned trial court errors were prejudicial to the defendant railroad. The Ohio Supreme Court sustained the Court of Appeals by dismissing Gallick's appeal to it. Gallick v. Baltimore & Ohio R. Co., 172 Ohio St. 488, 178 N.E.2d 597 (1961). The Supreme Court of the United States reversed the judgment of the Ohio Court of Appeals, holding that it had "erred in depriving petitioner of the judgment entered upon the special verdict of the jury," Gallick v. Baltimore & Ohio R. R. Co., 372 U.S. 108, 122, 83 S.Ct. 659, 668, 9 L.Ed.2d 618, Feb. 18, 1963. It held that Gallick's proofs were adequate to make a case for the jury under the FELA and concluded its decision as follows, "The judgment of the Ohio Court of Appeals is reversed and the case is remanded for further proceedings not inconsistent with this opinion." 372 U.S. 122, 83 S.Ct. 668. The Supreme Court's mandate went down on March 16, 1963. On March 18, 1963, the Baltimore & Ohio Railroad Company filed a motion for new trial in the Ohio Court of Appeals, and on March 20, 1963, James J. Gallick died. The motion for new trial charged serious misconduct of a juror during the trial and if such was proven, and if the motion was procedurally proper,[1] a new trial might have been called for. Some eight days after Gallick's death, the plaintiff, Gail M. Connors, notified Gallick's counsel through her lawyer that she was Gallick's daughter. On April 22, 1963, the Probate Court appointed Mary N. Gallick executrix of Gallick's will. This will named her as the wife of Gallick, appointed her as executrix, and devised and bequeathed to her the testator's entire estate. On the same date, the death of James J. Gallick was suggested and the cause in which the $625,000 judgment had been obtained was ordered revived in the name of Mary N. Gallick as executrix. On May 28, 1963, the Court of Appeals of Cuyahoga County entered its order denying the railroad's pending motion for a new trial and the counter motion to dismiss or strike this motion on procedural grounds, reciting the court's awareness that a settlement had been agreed upon by the widow-executrix and the railroad.[2] The order further provided that its implementing mandate to the Common Pleas Court would be recalled and the motions reinstated if Probate Court approval of the settlement agreed upon should be withheld. On May 31 the Probate Court approved the settlement, reciting that application had been made to settle "all claims of said estate and all claims of any beneficiaries of decedent (Gallick)" against the railroad. The settlement was concluded by payment of $475,000 to Mary N. Gallick, the widow-executrix, who gave her release to the railroad by which the railroad was released

"from any and all claims, demands, actions and causes of action which I have or may have, or any person claiming by or through me has or may have * * * arising out of or in any way connected with the alleged insect bite of August, 1954, the subsequent illness of James Gal-

---

1. The propriety of the motion for new trial in the Court of Appeals rather than the trial court was challenged, but resolution of the question is not necessary here. See Ohio Revised Code, §§ 2321.-17, 2321.21, 2325.01.

2. At the time of settlement, with the interest that had accrued upon the $625,-000 judgment and taxed costs, it would have required a payment near $800,000 to satisfy the judgment debt. The settlement called for a total payment by the railroad of $475,000.00.

lick, any loss of earnings, hospital, medical or other expense, or pain and suffering sustained by James Gallick during his lifetime, and any and all claims for damages by reason of his death if and to the extent the same may have been caused by the negligence or wrongful act of the Baltimore and Ohio Railroad Company. * * * "

The release further provided that the executrix' attorney was to enter on the Common Pleas Court record of the original case that "The judgment in this action having been satisfied, the same is hereby canceled and discharged."

Then on June 7, 1963, this lawsuit was commenced by plaintiff-appellant Gail M. Connors as a diversity action against Mary N. Gallick, executrix of the James J. Gallick Estate. Mrs. Connors sought to have it declared that she was entitled to participate in the $475,000.00 paid on the settlement as Gallick's daughter. Appellant also claims here that her complaint raised an issue as to whether Mary N. Gallick was the widow of Gallick in its prayer "that the Court declare that plaintiff is entitled to all of said settlement fund (or in the alternative to one-half thereof if the defendant Mary N. Gallick, is declared to be the surviving widow). * * * "

In rough terms, appellant's theory is that the death of Gallick while the motion for a new trial was pending necessitated a revival of the action under Section 9 of the Act, 45 U.S.C.A. § 59, so that any subsequent settlement would be held for the widow and children as the beneficiaries named in that section, rather than as an asset of Gallick's estate. The District Court dismissed the complaint, ruling that the right of action merged into the judgment obtained by Gallick so "there was nothing susceptible of being survived by a personal representative" and that "the mere coincidence of his death four years later while judgment still remained unpaid did not change the status of the original action." We agree with the conclusion of the District Judge.

While the following facts may not be essential to our decision, they do provide some assurance that our holding does not work an unnatural and perhaps inequitable disposition of the large recovery involved. Plaintiff's complaint, together with affidavits filed in opposition to the motion to dismiss it, reveals that in 1926 when she was one year old her mother, then living in Minneapolis, Minnesota, was divorced from James J. Gallick. Plaintiff had been born in 1925, some three or four months after the marriage of her parents. Following the divorce, her mother resumed her maiden name and plaintiff adopted it "in most of her personal dealings and affairs." James J. Gallick had apparently left Minneapolis prior to the divorce and neither plaintiff nor her mother had any further contact with him or knew his whereabouts until early in 1963 when they learned of the decision of the Supreme Court ordering reinstatement of the spectacular $625,-000 judgment in his favor, and of his death—an event made newsworthy because of that recent decision. This news activated plaintiff's interest in her long-lost father and plaintiff's existence and interest in the money which Gallick had recovered was communicated through a lawyer to counsel who had represented Gallick, and who then were acting for Mary N. Gallick. It was after receiving this information that the settlement of the judgment was concluded. Plaintiff, having married Connors, was 38 years old at the time of her father's death. She and her father had been, in effect, mutual strangers during at least the last 37 years of their lives. While the issue of the status of Mary N. Gallick as widow of James was not decided, a certificate of the marriage in Chicago in 1926 of Jacob J. Gallick (as James J. Gallick was sometimes known) to one Pearl Wilson was put in evidence. Although no evidence was taken on the question, the brief of Mary N. Gallick's counsel in this Court asserts that while Pearl Wilson was a fictitious name used by her for personal reasons, Mary Gallick did in 1926 become James' wife, and lived with him as his wife until his death in 1963. It is of record that by his will, executed in 1959 after he had recovered the $625,-

000 judgment, he identified Mary N. Gallick as his wife and made her his sole legatee with provision that should she predecease him, his estate was to go to her daughter by a previous marriage. There is no evidence before us in this case as to the nature and severity of Gallick's original injury, but after referring to the insect bite the Supreme Court said, "The wound subsequently became infected. The infection failed to respond to medical treatment, and worsened progressively until it spread throughout petitioner's body, creating pus-forming lesions and eventually necessitating the amputation of both his legs." 372 U.S. 109, 83 S.Ct. 661. The size of the verdict rendered—and apparently the Ohio Court did not find it excessive—bespeaks the severity and magnitude of Gallick's suffering, disability and loss. We are not advised whether Gallick's death on March 20, 1963, resulted from the injuries suffered in the August 10, 1954, occurrence.

Returning, then, to the legal question before us, we observe that neither the researches of counsel nor our own have provided us with precedential decisions dealing with the perplexing question presented by the fortuities of this litigation.

Section 1 of the Act, 45 U.S.C.A. § 51, is construed to provide two causes of action, one belonging to the injured employee to be prosecuted by him for his own injury, suffering and losses, and the other a wrongful death action in favor of the named beneficiaries for their pecuniary damages consequent upon the employee's death. Van Beeck v. Sabine Towing Co., 300 U.S. 342, 346–349, 57 S.Ct. 452, 81 L.Ed. 685, 688–689 (1937); St. Louis I. M. & S. Ry. Co. v. Craft, 237 U.S. 648, 657–658, 35 S.Ct. 704, 59 L.Ed. 1160, 1163–1164 (1915). As the Act was originally written, the first cause of action for the personal injury, suffering and loss of the employee abated with his death. Michigan Central R. R. Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913); Garrett v. Louisville & N. R. R. Co., 235 U.S. 308, 35 S.Ct. 32, 59 L.Ed. 242 (1914). Section 9 was added to the Act by amendment in 1910, creating a right of survival of this first cause of action as follows:

"Any right of action given by this chapter to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee * * *." 45 U.S.C.A. § 59.

 It may be assumed that if Gallick had died before trying his lawsuit to judgment, there would have accrued to his widow and to the plaintiff as his child a right to prosecute his own cause of action and, if death resulted from his injuries, a wrongful death action to recover whatever pecuniary loss was suffered by them. Van Beeck v. Sabine Towing Co., supra. It is clear that in prosecuting these actions, his personal representative would be acting not for the benefit of his estate but for the beneficiaries named in Sections 1 and 9, and that any recovery would be received and held as trustee for such beneficiaries, Chicago B. & Q. R. R. Co. v. Wells-Dickey Trust Co., 275 U.S. 161, 48 S.Ct. 73, 72 L.Ed. 216 (1927); Stark v. Chicago North Shore & Milwaukee Ry. Co., 203 F.2d 786 (CA7, 1953); Friedman v. McHugh, 168 F.2d 350, 11 A.L.R.2d 733 (CA1, 1948); Stolz v. New York Cent. R. Co., 7 N.Y.2d 269, 196 N.Y.S.2d 969, 164 N.E.2d 849 (1959). Also, it seems to be agreed here that if a judgment recovered in his lifetime by an injured employee for his own injuries is reversed and a new trial had after his death, such action would be prosecuted, or a settlement made, under Section 9 (and perhaps Section 1 as well) for the benefit of the beneficiaries there named. Compare Nowery v. United States, 107 F. Supp. 223 (E.D.Pa.1952); Cincinnati N. O. & T. P. Ry. Co. v. Claybourne's Adm'r, 169 Ky. 315, 183 S.W. 903 (1916); St. Louis & S. F. R. R. Co. v. Oldham, 188 Okl. 245, 107 P.2d 1017 (1940). As already suggested, plaintiff's position is that Gallick's death at a time when his judgment might have been set

aside if the pending motion for new trial were granted had identical results.

We are unable to agree with plaintiff's position. Gallick in his lifetime had prosecuted his own cause of action to judgment, and his death did not abate his action or vacate his judgment. The appellate proceedings did not wipe out his judgment, 1 C.J.S. Abatement & Revival § 128, and prior to his death the United States Supreme Court had reversed the Ohio Court of Appeals judgment for the defendant, saying that that court had erred "in depriving petitioner of the judgment entered upon the special verdict." In a situation where a plaintiff died before the United States Supreme Court reversed a judgment rendered for defendant upon the erroneous granting of a new trial, the Court in Coughlan v. District of Columbia, 106 U.S. 7, 11, 1 S.Ct. 37, 40, 27 L.Ed. 74, 76 (1882), said

> "The judgment rendered upon the verdict in favor of the plaintiff having been erroneously set aside, the subsequent final judgment for the defendant must be reversed, and the former judgment for the plaintiff affirmed *as of the date when it was rendered,* in order to prevent the action from being abated by the subsequent death of the plaintiff." (Emphasis supplied.)

We do not think that the Supreme Court's emphasis on preventing abatement detracts from the appositeness of its language. See also Lewis v. St. Louis & I. M. R. R. Co., 59 Mo. 495, 21 Am.Rep. 385 (1875). We are of the view that if the railroad's motion for new trial, made after the mandate had come down from the U. S. Supreme Court and two days before Gallick's death, had been denied or unconditionally withdrawn leaving the judgment unimpaired, the avails thereof would be an asset of his estate. Compare Mellon v. Goodyear, 277 U.S. 335, 48 S. Ct. 541, 72 L.Ed. 906 (1928); Seaboard Air Line Ry. Co. v. Oliver, 261 F. 1 (CA 5, 1919); Daly v. Chicago & N. W. Ry. Co., 262 Minn. 351, 114 N.W.2d 682, 94 A.L.R.2d 499 (1962); cf. Siberell v. St. Louis-San Francisco Ry. Co., 320 Mo. 916, 9 S.W.2d 912 (1928).

At the time the railroad filed its motion for new trial, Gallick was its judgment creditor and it was his judgment debtor. We are impressed that Gallick's cause or causes of action having been merged in his judgment, he and the railroad would have the right to compromise such judgment in consideration of the railroad withdrawing its motion. The proceeds of such compromise would belong to his estate. Gallick's death did not convert his judgment into a cause of action to be prosecuted for the benefit of his widow and the plaintiff, as his child, under Sections 1 or 9 of the Act. The railroad had the right to withdraw its motion and no right of plaintiff would thereby be taken from her. As the litigation then stood, she had no right that could be taken from her; the only event that could give her any right would be the granting of a new trial. That never occurred. Gallick died possessed not of an unlitigated cause of action, but of a judgment which became a part of his estate. We know of no reason why the railroad could not withdraw or consent to the denial of its motion for new trial for the consideration of paying less than the face value of the judgment. Neither can we find any reason why the executrix of Gallick's estate, with Probate Court approval, could not obtain a denial of the pending motion and avoid jeopardy to an estate asset by accepting less than its full face amount. Mary Gallick's release given to the railroad, incorporated in her application to the Probate Court for leave to settle, contained allegations that she was acting "as widow of James Gallick, deceased, as his sole dependent, as the duly appointed * * * executrix of his estate, and as his sole and only personal representative empowered by law to maintain and compromise suit on behalf of all beneficiaries under the Federal Employers' Liability Act," and purported to release "all claims, demands, actions and causes of action which I have or may have, or any person claiming by or through me has or may have * * *

arising out of or in any way connected with the alleged insect bite of August, 1954," in addition to agreeing to the entry of a satisfaction of Gallick's judgment in the Court of Common Pleas. We are not impressed that the comprehensive language employed created in plaintiff or anyone else any right or rights that did not exist, nor that it impaired the validity of what was legally accomplished. Certainly counsel for the railroad, aware of the eleventh hour interest of plaintiff, would require no less in paying over the sum of $475,000.00. We likewise do not think that the obvious effort of counsel for the executrix and for the railroad to employ procedural forms and recitals to make effective the agreed settlement impairs its validity if it was otherwise valid. We believe it was.

Under his holding it was not necessary for the District Judge to decide the issue of Mary N. Gallick's widowhood or the validity of Gallick's will. Under his decision, affirmed by us, the Probate Court will decide these questions.

Judgment affirmed.